959 So.2d 459 (2007)
STATE of Louisiana
v.
Calvin WARE.
No. 2006-K-1703.
Supreme Court of Louisiana.
June 29, 2007.
*460 Charles C. Foti, Jr., Attorney General, Brent C. Coreil, District Attorney, Raymond J. LeJeune, Assistant District Attorney, for applicant.
James Edward Beal, Jonesboro, for respondent.
PER CURIAM.
The state charged defendant by grand jury indictment with aggravated rape in violation of La.R.S. 14:42. After trial by jury, defendant was found guilty of attempted forcible rape, a lesser included offense. After adjudicating defendant a second offender for purposes of R.S. 15:529.1(A)(1)(a), the trial court sentenced him to 24 years imprisonment at hard labor, the first two years to be served without benefit of probation, parole, or suspension of sentence. On appeal, the Third Circuit reversed defendant's conviction and sentence after concluding that "a rational trier of fact could not have found the Defendant guilty beyond a reasonable doubt." State v. Ware, 05-1451, p. 5 (La. App. 3rd Cir.4/12/06), 929 So.2d 240, 244. We granted the state's application to reverse that decision because the court of appeal erred by substituting its appreciation of the evidence for that of the factfinder and thereby failed to accord due deference to the rational credibility choices made by the jury.
The evidence at trial established the following. On the evening of November 22, 2003, the victim brought her four small children to the home of her former in-laws, Calvin and Beth Ware. The victim testified that she had a good relationship with her former father-in-law, defendant, despite divorcing his son in April, 2003. The victim explained that Mrs. Ware often babysat her children while she was at work. On this particular occasion, the victim brought her children to the defendant's home to spend the night. The victim also intended to spend the night at the house and to leave for work the next morning.
Later that evening, defendant agreed to drive his daughter, her boyfriend and his daughter's young son to a Boy Scout camp maintained by the boyfriend near Bayou Chicot, north of Ville Platte, Louisiana. The victim and her nine-year-old son, Cody, accompanied the group on the drive, leaving the other three children in the care of Mrs. Ware. The victim explained that she chose to ride along with the group because she had never been to the property in Chicot and was curious to see it before she permitted her sons to spend the weekend there with their aunt. After dropping off the group at the camp in *461 Chicot, defendant remained in the car with the victim and Cody. He then expressed a desire to drive around the back roads of the area to look for deer and other animals.
Shortly thereafter, the victim realized that defendant was drinking from a bottle of vodka he had underneath his seat. At one point in the excursion, defendant stopped at a service station where the victim bought him another pint of vodka. Eventually, as defendant cruised the back roads, the victim fell asleep in the front seat of the car while Cody slept in the back. The victim awoke when she felt the car roll to a stop and heard the defendant open the passenger side door. The victim testified at trial that when she tried to get out of the vehicle, defendant shoved her back onto the front seat. She then tried to get out of the car through the driver's side door but the defendant grabbed her leg and began to pull off her jeans as she was "fighting and trying to get away." Defendant managed to pull the victim's jeans off of one leg and to pull down her underwear as she struggled and screamed. According to the victim, he then penetrated her while the young Cody slept in the back seat.
During the struggle, the victim inadvertently hit a pre-programmed speed dial number on her cellular phone, which called the Oakdale Police Department, her former husband's employer. Officer Charlene Hudgens, the dispatcher on duty that night, listened on that open line and overheard what seemed to her background conversation between two persons engaged in some sort of "struggle." The officer based her opinion on "comments I could hear the female saying towards the male subject directing him to stop doing certain things." The woman was "sobbing and crying" and the male voice was low and stern. It seem to the officer that "there was some sort of not only a physical assault, but possibly a . . . sexual assault going on." Officer Hudgens alerted her supervisor and logged in the call. Using the caller identification system at the police department, Officer Hudgens determined the telephone number used by the phone placing the call and she called the number back.
In the meantime, the victim had managed to pull away from the defendant just after he turned from her momentarily as he experienced problems with ejaculating and she escaped from the car. Shortly after the assault, defendant began "fidgeting" underneath the hood of the vehicle and told the victim that the car had broken down. He instructed her to call someone on her cellular phone to come pick them up. Before the victim was able to dial anyone, she received Officer Hudgens's call on her phone. By that time, Officer Hudgens recognized the victim's voice, familiar to her because the victim had been married to a fellow officer at the Oakdale Police Department. Hudgens's advised the victim, who was unable to furnish an exact location because she was unfamiliar with the area, to keep her phone on until help arrived. The victim woke up her son and made her way to a nearby house at the end of the road where defendant had parked and she called the police.
Evangeline Parish Deputy Sheriff Michael Fontenot arrived first on the scene, and he found defendant asleep at the wheel of his car, the driver's side door open and the hood of the vehicle raised. When Deputy Fontenot tugged on defendant to remove him from the car, he woke up and stated, "She got what she deserved." It appeared to the deputy that defendant was intoxicated and his breath smelled of alcohol. Deputy Fontenot placed defendant in handcuffs with the aid of Deputy Dwayne Andrus, who had arrived *462 on the scene just seconds behind him and heard defendant repeat his statement that the victim "got what she deserved." The comment was also overheard by Deputy Anthony Reed, the third and final officer to arrive on the scene. With defendant secured in the presence of Deputies Andrus and Reed, Deputy Fontenot drove down the road to the residence where the victim had placed the call to his office. The officer separated mother and son to spare the child of details of the incident and asked the victim what had happened. She explained that defendant had asked her for sex, that she had turned him down, and that after driving around for a while, he then assaulted her, pulling down her pants and choking and hitting her. However, in response to a direct question by Deputy Fontenot, the victim stated that she had not been raped by defendant.
Deputy Fontenot placed the victim and her son in his patrol unit and drove back to the scene. At that time, defendant told Fontenot that he had been driving the back roads looking for deer when his car broke down. Defendant explained that he stayed off the main roads because "he likes to drink" and would not get a D.W.I. for driving the back roads. Although the officers did not see any bruising on the victim's face and neck, Deputy Fontenot placed defendant under arrest for simple battery. According to Deputy Reed, after repeating her statement that defendant had grabbed her around the throat and "knocked her around a little bit" but had not sexually assaulted her, she turned to him and added, "It's not that he didn't try." Deputy Reed then drove the victim and her son back to defendant's home while Deputy Fontenot transported defendant to the station house for booking and Deputy Andrus remained on the scene with the car until a wrecker arrived.
Later that morning, the victim went to the Evangeline Sheriff's Department where she "broke down and cried" and stated that defendant had raped her. The police immediately sent her for a rape examination at the Ville Platte Medical Center. On that afternoon, the police also interviewed defendant, who gave a formal statement in which he admitted that had been drinking and explained that he remembered little of the evening. Two days later, defendant gave the police a DNA sample and at that time, when asked again what had happened, defendant stated that he loved the victim "like a daughter" but that if they "did have sex," it was because "she wanted to."
The results of the rape examination conducted at the Ville Platte Medical Center were largely negative. The examining physician, Dr. Steele, found no trauma to the victim's back, neck, chest, or abdomen and did not detect any vaginal lesions, lacerations, or bruises. Dr. Steele did find the victim's "mood and affect" consistent with that of someone who had endured a sexual assault, but the results of vaginal swabs taken from her also proved negative.
The state thus could not provide physical evidence corroborating the victim's account of rape and its only other witness on the scene at the time, the victim's son Cody, had been asleep in the backseat of defendant's car for much of the night and recalled only that at one point he woke up when he heard his grandfather "hollering" at his mother. However, he did not see or hear anything else and fell asleep again until awakened by his mother before setting off on foot to find help.
Defendant did not testify at trial but his wife informed jurors that he was in such poor health that he dressed in jogging pants because he did not have the dexterity to button up a pair of pants, and that he drank "whatever he could get his hands on, and he'd make sure he had enough." As a result, defendant had erectile difficulties *463 which had not been improved by a recent prescription for Viagra which Mrs. Ware filled for him every month. She never saw him take the drug and, in any event, it did not work as their sex life got "worser each time." Mrs. Ware testified that until the night of the incident, she and defendant had enjoyed a close relationship with the victim, even after she divorced their son. That relationship ended when she opened the door at Cody's knock and found the victim standing on the porch crying and her husband seated in the back of a police cruiser parked outside. According to Ms. Ware, when she asked the victim what had happened, "this is exactly what she said on the porch that he tried to but she said he did not succeed." Mrs. Ware admitted telling the victim that ". . . if it'd be anyone else that he had tried to rape . . . I could believe but I can't believe he tried to rape you."
Surveying this evidence, the court of appeal readily acknowledged that "the testimony of a victim alone may be sufficient to establish the elements of a sexual offense provided there is no internal contradiction or irreconcilable conflict with physical evidence." Ware, 05-1451 at 5, 929 So.2d at 244 (internal quotation marks and citation omitted). Nevertheless, the court concluded that "[w]hen faced with the overwhelming physical evidence which militates against the finding of a sexual assault, the testimony of the investigating officers, the testimony of the victim's ten-year-old son who was present in the back seat during this occurrence, and the medical evidence submitted through the testimony of Dr. Steele, we are convinced that a fair reading of the whole record leads us to the inescapable conclusion that a rational[] trier of fact could not have found the Defendant guilty beyond a reasonable doubt." Id.[1]
However, a reviewing court may impinge on the trier of fact's discretion *464 "only to the extent necessary to guarantee the fundamental due process of law." State v. Mussall, 523 So.2d 1305, 1311 (La.1988). In the present case, the verdict returned by the jury, attempted forcible rape, was one that any rational trier of fact could have reached taking into account the entirety of the evidence introduced at trial, including not only the victim's prior inconsistent statements on the scene and on the porch of the Ware residence that defendant did not rape her (although not for the lack of trying) but also the testimony of Officer Hudgens with regard to the "open line" call which sounded to her as if a sexual assault were taking place, the victim's son who awoke briefly to the sound of conflict between his mother and the defendant, defendant's statements on the scene that the victim "got what she deserved," and, even, the testimony of defendant's wife with regard to his sexual problems. A trier of fact may accept or reject the testimony of a witness in whole or in part. State v. Hano, 05-2090, p. 7 (La.App. 1st Cir.2006), 938 So.2d 181, 187; State v. Pontiff, 604 So.2d 71, 76 (La.App. 3rd Cir.1992). In the present case, jurors therefore did not act irrationally by returning a verdict which gave defendant the benefit of the doubt on the issues of penetration and degree of force employed, see State v. Parish, 405 So.2d 1080, 1086-87 (La.1981)("[I]t was the legislative aim to divide the continuum of acts of coerced sexual intercourse into two categories, aggravated rape and forcible rape, thereby assigning to the jury the function of fixing the range of permissible punishment for convicted offenders by returning a verdict which appropriately fits the crime and the degree of force used."), but which also gave effect to testimony rationally supporting a finding that a conflict between the defendant and the victim stemmed from his unwanted and forcible sexual advances. Under these circumstances, due process does not require disturbing a fundamentally fair result.
*465 Accordingly, the decision below is reversed, defendant's conviction and sentence are reinstated, and this case is remanded for purposes of execution of sentence.
DECISION OF COURT OF APPEAL REVERSED; CONVICTION AND SENTENCE REINSTATED; CASE REMANDED.
NOTES
[1] In his opposition to the state's original application to this Court, his brief following this Court's grant of the state's application, and in oral argument, appellate counsel asserted that the state's evidence was insufficient to support the jury's verdict for a reason that the court of appeal did not specifically address in its decision: at no time during trial did any witness, either law enforcement personnel or the victim, directly identify defendant as the person arrested on the scene or as the alleged perpetrator of the crime. In counsel's view, the prosecution's failure to take this basic step renders defendant's conviction an "absolute nullity."

The rational fact finder test of Jackson v. Virginia requires that the state negate any reasonable possibility of misidentification, State v. Long, 408 So.2d 1221, 1227 (La. 1982), and the test presupposes that a defendant is, in fact, identified at trial. However, as defense counsel readily acknowledged in his opening remarks to the jury, this case did not involve strangers but "we have here a father-in-law, a son, a separated daughter [-in law] and some children involved. . . ." The defense therefore made no effort to suggest that there was any possibility that the Calvin Ware present in court was not the Calvin Ware accused by the victim of rape and arrested on the scene for that offense by the police. Jurors had the opportunity of observing the witnesses as they testified in defendant's presence and could judge for themselves from their demeanor that when the victim spoke of her relationship with her former father-in-law and accused him of rape, when her son Cody referred to his "paw paw" Calvin, when the defense called Joseph Lockett to testify about his relationship with his former wife and how she and the children often stayed in his father's home, and Elizabeth Ware to detail for jurors the physical problems of her husband, they addressed the Calvin Ware whom the state had haled into court to face his former daughter-in-law's accusation of rape. See State v. Stewart, 00-2960, p. 7 (La.3/15/02), 815 So.2d 14, 17 (citing 4 J. Wigmore, Evidence, § 1157 (Chadborne rev.1972) for the principle of autoptic proference, or things proved by the self-perception of the tribunal); see also State v. Zihlavsky, 505 So.2d 761, 765 (La.App. 2nd Cir. 1987)(lack of direct evidence of defendant's age did not preclude his conviction for aggravated crime against nature when "defendant's physical appearance was open to view by the jurors" who could determine for themselves that more than three years separated his age from the ages of his juvenile victims).
We further note here that there was evidence at trial that defendant had been drinking at the time of the offense, and later professed no recall of the incident when he gave the police a formal statement. The defense thereby suggested that the alcohol, when combined with defendant's other physical problems, had rendered him incapable of performing sexually, as his wife detailed for jurors, and of penetrating the victim as she claimed. For all that appears, jurors gave effect to that testimony by returning their responsive verdict of attempted forcible rape. However, the defense did not go further and request, nor did the court give, a jury instruction on intoxication as a defense under La. R.S. 14:15 to crimes which require proof of specific intent. Although intoxication is not a defense to the charged offense of aggravated rape, a general intent crime, State v. Kennedy, 00-1554, p. 10 (La.4/3/01), 803 So.2d 916, 923, it is a defense to the crime for which jurors convicted him, attempted forcible rape, which requires proof of specific intent. State v. Dorsey, 30,683, p. 9 (La.App.2nd Cir. 6/24/98), 718 So.2d 466, 471, writ denied 98-2227 (La.12/18/98), 732 So.2d 54. Nevertheless, given the failure of the defense to request an instruction under La.R.S. 14:15, the evidence in the record of defendant's drinking at the time of the offense does not provide a reviewing court with a basis for speculating how a rational trier of fact might have responded if the defense of intoxication had been asserted at trial to any of the responsive verdicts provided the jury. Cf. State v. Juluke, 98-2740, pp. 4-5 (La.1/8/99), 725 So.2d 1291, 1293 ("The Jackson standard . . . does not provide a defendant with a means of splitting alternative and inconsistent defense in different forums, raising one defense before the jury and when that fails, a second defense presupposing a different set of facts in an appellate court conducting sufficiency review under Jackson and La.C.Cr.P. art. 821(E).").