861 So.2d 144 (2003)
STATE of Louisiana
v.
William TAVES.
No. 2003-K-0518.
Supreme Court of Louisiana.
December 3, 2003.
*145 Richard P. Ieyoub, Attorney General, Michael Harson, District Attorney, Bart J. Bellaire, Calvin E. Woodruff, Jr., for Applicant.
Lawrence C. Billeaud, Lafayette, for Respondent.
PER CURIAM.
The state charged defendant-respondent by bill of information with violations of La.R.S. 14:46.1, false imprisonment when the offender is armed with a dangerous weapon, and La.R.S. 14:44.1, second degree kidnapping. After trial by jury in October, 2001, he was found guilty as charged on both counts. The trial court sentenced respondent to concurrent terms of 10 years imprisonment at hard labor for false imprisonment and to 25 years imprisonment at hard labor for second degree kidnapping, two years without benefit of parole, probation, or suspension of sentence. The trial court also ordered that the sentences will run consecutively with *146 any other sentence previously imposed.[1] On appeal, the Third Circuit affirmed respondent's convictions, rejecting his argument that the evidence did not support the jury's verdict on either count, but vacated his sentences as excessive and remanded the case for resentencing. State v. Taves, 02-0709 (La.App. 3rd Cir.1/15/03), 846 So.2d 1 (Cooks, J, dissenting). This Court granted the state's application to reverse that decision and reinstate respondent's sentences because we agree with the dissenting views of Judge Cooks that no abuse of the court's sentencing discretion appears on the present record.
The charges in this case stemmed from a month-long incident in February 2000, after respondent and the victim, Farrah Daigle, rented a home in a secluded area by the Vermillion River in Abbeville, Louisiana. Daigle testified at trial that during the month, following a shooting incident at her mother's home in Lafayette, respondent held her hostage to his fears that she would disclose his role in the shooting incident or end their relationship by walking out on him. The victim told jurors that respondent denied her access to a telephone or a vehicle, and frequently threatened her with a gun, even discharging the weapon around her to frighten her and to impress upon her that he would, in fact, hunt her down and kill her if she ever left him. On one occasion, which formed the basis of the second degree kidnapping charge, respondent first confronted Daigle at gunpoint, ordered her to strip, then told her to dress and drove her to the Vermillion River, where he conducted a mock murder/suicide scenario which had Daigle on the ground begging for her life with the gun pointed at her head. The incident ended with several shots aimed past Daigle as she walked back to the car without turning around in a test of loyalty and trust dictated by respondent. Finally, at the end of February, respondent allowed Daigle and one of her friends to leave home to run errands. Although she had in the past not taken advantage of any opportunity to escape because she feared that respondent would follow through on his threats to kill her, on this occasion she sought refuge in the home of her uncle in Scott, Louisiana. When respondent pursued her there, she called the police and had him arrested. Daigle then took refuge in a battered women's shelter in Lafayette, Louisiana, and eventually moved out of state.
In conducting a sufficiency review of the evidence, the Third Circuit acknowledged that much of Daigle's testimony about the events of that February appeared contradictory or inconsistent with the testimony offered by other witnesses. Taves, 02-0709 at 9, 846 So.2d at 7. However, the court of appeal concluded that Daigle's uncontradicted and undisputed testimony about an incident occurring on February 7, in which respondent backed her against a living room wall and fired a shot past her ear to keep her from walking out of the home and ending their relationship, supported the jury's verdict on the false imprisonment count. Id., 02-0709 at 8-9, 846 So.2d at 7. Similarly, the incident at the Vermillion River where respondent had her begging for her life after forcing her *147 from the home at gunpoint, was also uncontradicted and undisputed, and supported the jury's verdict of second degree kidnapping, under a trial court's instruction that the offense is committed when victim is forcibly seized and carried from one place to another by an offender armed with a dangerous weapon. La.R.S. 14:44.1(A)(5). Id., 02-0709 at 11, 846 So.2d at 8.[2]
However, the court of appeal also found that these same circumstances failed to support the sentences imposed by the court on either count. With regard to the sentence of 10 years imprisonment at hard labor, the maximum term for the offense under La.R.S. 14:46.1, the majority on the panel found that the sentence made "no measurable contribution to the acceptable penal goals and is grossly disproportionate to the severity of the crime as to shock one's sense of justice." Taves, 02-0709 at 16, 846 So.2d at 11. The court of appeal reached the same conclusion with regard to the 25-year term imposed on the second degree kidnapping count, although the court acknowledged that the penalty is a "midrange sentence" for the offense. Id., 02-0709 at 16-17, 846 So.2d at 11-12. Dissenting, Judge Cooks expressed her opinion that the sentences did not shock her sense of justice and that a defendant in a criminal case otherwise has no right "to comparison shop or seek competitive bids during the sentencing phase of a criminal proceeding." Taves, 02-0709 at 1, 846 So.2d at 13 (Cooks, J., dissenting).
A trial judge has broad sentencing discretion in Louisiana, and a reviewing court may not set sentences aside absent a manifest abuse of discretion. State v. Cann, 471 So.2d 701, 703 (La.1985). However, in appropriate circumstances, a reviewing court has the duty to carry out its mandate under La. Const. art. I, 20. Sentence review by appellate courts in Louisiana began with our seminal decision in State v. Sepulvado, 367 So.2d 762 (La. 1979), and we made clear in the opinion that the determination of whether a sentence which otherwise falls within the range of punishment provided by the legislature for a particular offense is excessive, i.e., so disproportionate to the offense that it represents the needless infliction of pain and suffering, State v. Bonanno, 384 So.2d 355, 357 (La.1980), entails more than a priori judgments by an appellate court. We held that "the statutory criteria legislatively provided by La.C.Cr.P. art. 894.1 (1977), which are similar to those evolved by courts in other American jurisdictions with a constitutional or statutory duty to review excessiveness, provide appropriate criteria by which to measure whether a sentence within statutory limits is nevertheless excessive, either by reason of its length or because it specifies confinement rather than less onerous sentencing alternatives." Sepulvado, 367 So.2d at *148 769. Those criteria have evolved considerably since our decision in Sepulvado and now encompass over 30 sentencing factors. Although no factor is accorded greater weight than any other factor by the statute, "`[i]n assessing the nature and gravity of an offense, the courts have repeatedly emphasized the element of violence and danger to the person.'" State v. Telsee, 425 So.2d 1251, 1254, n. 1 (quoting Hart v. Coiner, 483 F.2d 136, 141 (4th Cir.1973)).
In the present case, at sentencing the trial judge stated that he had reviewed "a presentence investigation report, the seriousness of the offenses, [and] the recommendation of the probation and parole officer in this case which does not recommend probation," as well as the impact of the crimes on the victim. The trial court did not articulate its reasons for sentence in terms of any of the factors provided by La.C.Cr.P. art. 894.1, and it did not have to justify the decision not to suspend any part of the sentence imposed on the second degree kidnapping count. See La.C.Cr.P. art. 893(A) ("The court shall not suspend the sentence of a conviction for a crime of violence as defined in La.R.S. 14:2(13) ... (r)...."). With regard to the lengths of the terms imposed, by any measure, respondent's conduct manifested deliberate cruelty to the victim, and he had used threats of or actual violence, as well as a dangerous weapon, in the commission of the crimes. La.C.Cr.P. art. 894.1(B)(1), (6), (10). He had also "foreseeably endangered human life by discharging a firearm during the commission of an offense which has, as an element, the use, attempted use, or threatened use of physical force against the person or property of another." La.C.Cr.P. art. 894.1(B)(18). In addition, the presentence report reveals that the victim suffered hearing loss and a broken foot as the result of the crimes and paid her medical expenses out of her own pocket, including mental heath treatment for post-traumatic stress disorder, circumstances indicating that defendant's conduct "resulted in a significant permanent injury or significant economic loss to the victim...." La.C.Cr.P. art. 894.1(B)(9).
The presentence report also reflects, and defense counsel conceded at sentencing, that the defendant had a prior felony conviction in May 2001 for aggravated criminal damage to property, a crime of violence listed in La.R.S. 14:2(13)(u). According to the report, he received a sentence of seven years imprisonment at hard labor, all but two years of the term suspended, with three years active probation. Cf. La.C.Cr.P. art. 893(A). Respondent remained classified as a first offender for sentencing purposes in the present case because he committed the crimes against Daigle before, not after, his conviction for aggravated criminal damage to property. See La.R.S. 15:529.1(A)(1). Nevertheless, the record shows that respondent had been involved in separate incidents within one year marked by a total of four crimes of violence, including not only aggravated criminal damage to property and second degree kidnapping, but also aggravated assault, La.R.S. 14:2(13)(g) and, by discharging a firearm in the course of the offense, false imprisonment. La.R.S. 14:2(13) (crime of violence includes any offense "that involves the possession or use of a dangerous weapon."). He also has misdemeanor convictions in Indiana in 1995 following his arrest on several counts of criminal confinement, the equivalent of false imprisonment in Louisiana, see Ind.Code Ann. § 35-42-3-3 (Lexis, 1998), and for malicious injury/destruction of property, escape, and theft in Oklahoma in 1998. Respondent's prior record suggests that he "was persistently involved in similar offenses not already considered as criminal history or as part of a multiple offender adjudication," La.C.Cr.P. art. 894.1(B)(12).
*149 It also precludes a finding that the defendant had "no history of prior delinquency or criminal activity or has led a law abiding life for a substantial period of time before commission of the instant crime." La.C.Cr.P. art. 894.1(B)(28). In that same period of time, the presentence report shows a sporadic work history and a failed marriage for the 31-year-old offender.
In the present case, the various factors listed in La.C.Cr.P. art. 894.1 thus serve their intended purpose by providing "insight into the nature of the offender and his offense." Telsee, 425 So.2d at 1253. Given concurrent penalties in the present case, the touchstone of the inquiry into whether the court has imposed needless pain and suffering grossly disproportionate to the crimes is respondent's longer sentence for second degree kidnapping. In finding that midrange sentence disproportionate, the court of appeal used as a basis for comparison a single case in which the defendant received a sentence of 10 years imprisonment at hard labor for falsely imprisoning his wife and one of his daughters at gunpoint in the bathroom of their own home while conducting a stand-off with a S.W.A.T. team. State v. Reese, 34,275 (La. App. 2nd Cir.12/20/00), 774 So.2d 1164. The trial judge in Reese might well view the circumstances of the present case in a different light and impose different penalties, although there is no indication in the Reese opinion that the defendant actually shot at the victims.
However, we have stressed that on appellate review of sentence, the only relevant question is whether the penalty imposed is disproportionate to the offense, not whether another sentence might seem more appropriate. State v. Cook, 95-2784, p. 3 (La.5/31/96), 674 So.2d 957, 959; see also State v. Soraparu, 97-1027 (La.10/13/97), 703 So.2d 608. Although circumstances of the cases differ significantly, midrange sentences for the crime of second degree kidnapping are not uncommon in Louisiana. See, e.g., State v. Prince, 29,208 (La.App. 2nd Cir.1/24/97), 688 So.2d 643 (20 years); State v. Woodberry, 95-2402 (La.App. 4th Cir.12/27/96), 686 So.2d 984, writ denied, 97-0277 (La.6/20/97), 695 So.2d 1351 (35 years); State v. Meche, 95-0797 (La.App. 3rd Cir.12/6/95), 664 So.2d 828, writ denied 96-0493 (La.5/10/96), 672 So.2d 920 (25 years).
We therefore find that the trial court, which otherwise followed the general rule in La.C.Cr.P. art. 883 by imposing concurrent terms in the present case to run consecutively to any other sentence imposed in an unrelated case, did not abuse its broad sentencing discretion. Accordingly, the decision of the court of appeal is affirmed in part and reversed in part, respondent's sentences are reinstated, and this case is remanded to the district court for execution of sentence.
DECISION OF COURT OF APPEAL AFFIRMED IN PART, REVERSED IN PART; SENTENCES REINSTATED; CASE REMANDED.
NOTES
[1] The state charged respondent separately with aggravated assault in violation of La.R.S. 14:37, a misdemeanor offense. After a bench trial conducted simultaneously with the jury proceedings on the felony charges, the trial court found respondent guilty of that offense. The court sentenced respondent to six months imprisonment in the parish jail, to run concurrently with the sentences imposed in the present case, and consecutively with any other sentence imposed. Respondent's conviction and sentence for this offense were not involved in the present appeal and are not before this Court in this state application.
[2] The state had initially charged respondent with a violation of La.R.S. 14:44.1(A)(3), kidnapping in which the victim is physically injured. However, at trial, the prosecutor invited jurors to separate the defendant's conduct into two different transactions occurring at different times and argued that respondent was "guilty of holding [the victim] against her will at that house and in doing it with a threat of a weapon and death. And he's guilty of forcing her into the car that day down to the river against her will. That's false imprisonment with a weapon and it's second degree kidnapping. He did them both." The state thereby avoided any double jeopardy implications of trying the defendant for both false imprisonment under La.R.S.14:46.1 and second degree kidnapping, which may be committed when the victim is "[i]mprisoned or kidnapped" by an offender armed with a dangerous weapon. La.R.S. 14:44.1(A)(5). The court of appeal adopted the same view of the evidence in addressing the sufficiency of the evidence to support convictions on both counts.