STEWART, J.
liThe defendant, Stacy Humphreys, was convicted of obstruction of justice, in violation of La. R.S. 14:130.1. He was adjudicated a third-felony offender, and sentenced to serve 10 years’ imprisonment, without benefit of probation, parole, or suspension of sentence. The defendant now appeals. Based on the following reasons, we affirm the defendant’s conviction, amend his sentence, and affirm his sentence as amended.
FACTS
In the late evening of October 5, 2010, the defendant’s girlfriend at the time, Lea Ann McMurray Humphreys (“Lea Ann”), stabbed Kalina “Sherry” Beach (“Kalina”) with a knife, puncturing her lung. Lea Ann was charged with aggravated battery.
The knife was never recovered.
During the course of the investigation, the police determined that the defendant took the knife in an attempt to conceal the evidence against Lea Ann. On October 21, 2010, the defendant was charged via bill of information with one count of obstruction of justice, in violation of La. R.S. 14:130.1.
Kalina testified that she was living at the home of Jarret Buxton and Ashley Humphreys when the incident occurred. She alleged that Lea Ann was angry with her because she wouldn’t participate in a threesome with her and the defendant. On the day the incident occurred, Lea Ann, along with Rebecca Williamson, Courtney Ezell, and the defendant, drove to Jarret and Ashley’s home. Kalina stated that Lea Ann found her in the kitchen and attacked her. During the altercation, Lea Ann stabbed Kalina in her side, |2puncturing her lung. The scuffle transferred from the kitchen to the outside of the house, at which time the knife dislodged from Sherry’s body. Jarret grabbed the knife and placed it on a barbeque pit that was under the carport. Ka-lina stated that when Lea Ann went back towards the knife, the defendant, who was initially standing behind a car door during the stabbing, ran and grabbed it. The defendant and Lea Ann then got in their car and left.
Ashley, the defendant and Lea Ann’s cousin, testified that on the night of the stabbing, she received a phone call from Lea Ann. Ashley stated that Lea Ann told her that “her and the [defendant] was (sic) going to come down there and do all kinds of crazy stuff.” Ashley instructed Lea Ann not to come and hung up the phone. Ashley further testified:
Next thing I knew they was (sic) pulling in the driveway, me and Jarret walked out, told them they needed to leave. Lea Ann gets out of the car, comes running up there, run in the house with *1188 a knife. Stacy was standing behind the car.
Ashley testified that she witnessed the defendant step from behind the car and walk under the carport. Shortly thereafter, she went into the house to get a towel for Sherry. She did not witness the defendant pick up anything from under the carport, but the knife was gone when she came back outside.
Jarret testified that he did not witness the stabbing. However, he overheard Ka-lina state that she had been stabbed, and he saw the knife on the ground. He immediately kicked it out of the way of the altercation. Once Jarret broke the fight up, he placed the knife on the barbeque pit under the carport. Jarret did not see who took the knife, nor did he notice the | ¡¡defendant walking under the carport. Jarret did note that the defendant was standing near his Jeep, which was parked “close to the carport.”
Sergeant Mike Gilmore, of the Franklin Parish Sheriffs Office, interviewed the defendant as a witness to the crime. He testified that the defendant initially told him that there was no knife involved. However, Sergeant Gilmore related that the defendant recanted this original statement and stated,
I believe she stabbed — she stabbed her. I didn’t see her stab her, but I believe she did stab her and there was a knife. I picked the knife up and I don’t remember what I did with it.
On cross-examination, Sergeant Gilmore stated that he did not have any notes or recordings from his interview with the defendant.
Rebecca Williamson, Lea Ann’s sister and the defendant’s stepsister, testified that she witnessed Lea Ann and Kalina fighting outside, but she did not see Lea Ann stab her.
Several witnesses alleged that the defendant disclosed to them information regarding the knife. Sarah Beaube, who has a four-year-old child with the defendant, testified that the defendant called her the night of the stabbing and told her what happened, but he didn’t mention anything about the knife. In a subsequent conversation, Sarah stated that the defendant told her that “he wasn’t stupid and that they got rid of it and that if they — the cops wanted to find it they had to go to Big Creek.”
David Williamson, Lea Ann’s brother-in-law and Rebecca Williamson’s husband, testified that sometime after the incident occurred, the defendant told him that “it wasn’t no evidence to be found because he |,igot rid of it.” Williamson admitted that the defendant had been drinking when he made that statement, and that he and the defendant recently had a disagreement.
Taylor Box, a former friend of Lea Ann and the defendant, testified that the defendant told her that “he’s [the defendant] the one that actually hid the knife because they hid it behind a house in the bushes and once Lea Ann was gone or whatever he went back and got it and had actually threw it into Big Creek.”
To the contrary, the defendant, who was the only witness who testified on his behalf, testified that he never told anyone that he took the knife, or that he threw it into Big Creek. He further stated that the testimony of David Williamson, Sarah Beaube, and Taylor Box were not reliable, since “they did not like him.”
The defendant relayed his version of the October 5, 2010, incident. He stated that Rebecca Williamson drove to Jarret Bux-ton’s home and initiated a verbal altercation with Sherry. He, Lea Ann, and Courtney drove in a separate car to Jar-ret’s home because they were worried something might happen. The defendant *1189 denied telling Sergeant Gilmore that there was a knife involved in the incident, or that he handled a knife at any point. Rather, the defendant denied ever seeing a knife, and stated:
I said the only thing I seen (sic) that possibly cut Ms. Beach was when Lea Ann punched through the window and tried to grab her through the window, that’s the only thing.
|sWhen asked if he was worried if his girlfriend would be charged with a criminal offense, the defendant responded, “Well I knew it was blood, somebody was going to be charged with something.”
The trial court found the defendant guilty of obstruction of justice pursuant to La. R.S. 14:130.1. At the conclusion of the proceedings, the state informed the court of its intent to file a habitual offender bill, and the parties selected a date for the defendant’s arraignment. The trial court then set a date for sentencing and ordered a presentence investigation report.
On July 10, 2012, the trial court found the defendant to be third-felony habitual offender pursuant to La. R.S. 15:521.1. In addition to his present felony conviction for obstruction of justice, the defendant had been convicted of felony contributing to the delinquency of a juvenile on June 8, 2008, and felony simple criminal damage to property on May 23, 2008.
After considering the aggravating and mitigating factors in light of La. C. Cr. P. art. 894.1, the court sentenced the defendant to 10 years’ imprisonment without benefit of probation, parole, or suspension of sentence. The defendant appeals.
LAW AND DISCUSSION

Sufficiency of Evidence

We will begin our review with the defendant’s first assignment of error, in which he alleges that the evidence was insufficient to support a verdict of guilty of obstruction of justice. More specifically, he argues that the trial court erred in relying on Kalina’s testimony, since she is a biased witness because he is married to her attacker, Lea Ann. |fiWhen issues are raised on appeal, both as to the sufficiency of evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004). This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.2/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App.2d Cir.1/14/09), 1 So.3d 833. On appeal, a reviewing court must view the evidence in the light most favorable to the state and must presume in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence. Jackson, supra.
The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685; State v. Hill, 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758, writ denied, 2007-1209 (La.12/14/07), 970 So.2d 529.
*1190 |7The Jackson standard is applicable in cases involving both direct and circumstantial evidence. Direct evidence provides proof of the existence of a fact, for example, a witness’s testimony that he saw or heard something. State v. Lilly, 468 So.2d 1154 (La.1985). Circumstantial evidence provides proof of collateral facts and circumstances, from which the existence of the main fact may be inferred according to reason and common experience. Id. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by the evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Speed, 43,786 (La.App.2d Cir.1/14/09), 2 So.3d 582, writ denied, 2009-0372 (La.11/6/09), 21 So.3d 299. This is not a separate test that applies instead of a sufficiency of the evidence test when circumstantial evidence forms the basis of the conviction. Id. Rather, all of the evidence, both direct and circumstantial, must be sufficient under Jackson to convince a rational juror that the defendant is guilty beyond a reasonable doubt. Id.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Speed, supra; State v. Allen, 36,180 (La.App.2d Cir.9/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004). In the absence of internal Iscontradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Gullette, 43,032 (La.App.2d Cir.2/13/08), 975 So.2d 753; State v. Burd, 40,480 (La.App.2d Cir.1/27/06), 921 So.2d 219, writ denied, 2006-1083 (La.11/9/06), 941 So.2d 35. The trier of fact is charged to make a credibility evaluation and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Sosa, 2005-0213 (La.1/19/06), 921 So.2d 94.
La. R.S. 14:130.1 provides in pertinent part:
A. The crime of obstruction of justice is any of the following when committed with the knowledge that such act has, reasonably may, or will affect an actual or potential present, past, or future criminal proceeding as hereinafter described:
(1) Tampering with evidence with the specific intent of distorting the results of any criminal investigation or proceeding which may reasonably prove relevant to a criminal investigation or proceeding. Tampering with evidence shall include the intentional alteration, movement, removal, or addition of any object or substance either:
(a) At the location of any incident which the perpetrator knows or has good reason to believe will be the subject of any investigation by state, local, or United States law enforcement officers.
In order to find the defendant guilty of obstruction of justice, the state is required to prove beyond a reasonable doubt that he tampered with the evidence with the specific intent of distorting the results which may have reasonably proved relevant to the criminal investigation. Tampering with evidence includes the in *1191 tentional removal of an object from the location of |9the incident which the defendant knows or has good reason to believe would be the subject of investigation. La. R.S. 14:130.1.
In the instant case, Kalina and Jarret both testified that Buxton placed the knife on a barbeque grill under the carport. Kalina and Ashley observed the defendant walk under the carport. Jarret also relayed that the defendant was standing near his Jeep, which was parked close to the carport. Kalina testified that she saw the defendant grab the knife and leave the scene with it. Additionally, both Ashley and Jarret noticed the knife was missing after the defendant and Lea Ann left.
David, Sarah, and Taylor all testified that the defendant told them he got rid of the evidence. Moreover, Sarah and Taylor Box relayed that the defendant specifically informed them that he had thrown the knife in Big Creek. Sergeant Gilmore further testified that the defendant admitted in his interview that he had grabbed the knife.
Even though Kalina is the only -witness to testify that she actually saw the defendant pick up the knife and flee with it, her testimony is corroborated by several witnesses who testified that the defendant admitted that he had disposed of the knife, as discussed above.
After a careful review of the record, we find that the evidence established that the defendant took the knife with the knowledge that it would be pertinent to a criminal investigation against Lea Ann. As stated in the facts section of this opinion, when the defendant was asked if he was worried if his girlfriend would be charged | i0with a criminal offense, he responded, “Well I knew it was blood, somebody was going to be charged with something.” It is obvious the defendant disposed of the knife in order to affect the criminal investigation. The trial court did not err in concluding that the defendant, equipped with the knowledge that a criminal investigation would be conducted against Lea Ann, took the evidence in an attempt to protect her from prosecution.
We find that the evidence presented at trial, viewed under the Jackson standard, was sufficient to support the conviction of obstruction of justice pursuant to La. R.S. 14:180.1. This assignment of error therefore is without merit.

Excessiveness of Sentence

The defendant argues that the trial court erred in sentencing him to the maximum penalty provided by law and that his sentence serves no purpose other than to impose needless and purposeless pain and suffering. He believes that the trial court should have heavily weighed the fact that he is a disabled war veteran who had no significant criminal record until after he returned home from the service.
La. R.S. 130.1(B) states:
B. Whoever commits the crime of obstruction of justice shall be subject to the following penalties:
(1) When the obstruction of justice involves a criminal proceeding in which a sentence of death or life imprisonment may be imposed, the offender shall be fined not more than one hundred thousand dollars, imprisoned for not more than forty years at hard labor, or both.
(2) When the obstruction of justice involves a criminal proceeding in which a sentence of imprisonment necessarily at hard labor for any period less than a life sentence may be imposed, the offender may be find not more than fifty thousand |, Rollars, or imprisoned for not more than twenty years at hard labor, or both.
*1192 (3) When the obstruction of justice involves any other criminal proceeding, the offender shall be find not more than ten thousand dollars, imprisoned for not more than five years, with or without hard labor, or both.
The trial court is given wide discretion in imposing a sentence within minimum and maximum limits allowed by the statute; therefore, a sentence will not be set aside as excessive unless the defendant shows the trial court abused its discretion. State v. Hardy, 39,233 (La.App.2d Cir.1/26/05), 892 So.2d 710; State v. Young, 46,575 (La.App.2d Cir.9/21/11), 73 So.3d 473. On review, an appellate court does not determine whether another sentence would have been more appropriate, but whether the trial court abused its discretion. State v. Esque, 46,515 (La.App.2d Cir.9/21/11), 73 So.3d 1021. Intertwined with our review of a sentence for excessiveness is our review of the record to ensure that the trial court complied adequately with La. C. Cr. P. art. 894.1 and accorded proper weight to all relevant sentencing factors. State v. Smith, 433 So.2d 688 (La.1983). An excessive sentence is reviewed by examining whether the trial court adequately considered the guidelines established in La. C. Cr. P. art. 894.1 and whether the sentence is constitutionally excessive. State v. Gardner, 46,688 (La.App.2d Cir.11/2/11), 77 So.3d 1052. The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial court is not required to list every aggravating or mitigating circumstance so long as the |12record reflects that it adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Watson, 46,572 (La.App.2d Cir.9/21/11), 73 So.3d 471; State v. Tatum, 47,292 (La.App. 2 Cir. 8/15/12), 103 So.3d 550. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Swayzer, 43,350 (La.App.2d Cir.8/13/08), 989 So.2d 267, writ denied, 08-2697 (La.9/18/09), 17 So.2d 388. The defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, the seriousness of the offense, and the likelihood of rehabilitation are some of the elements considered, but the trial court is not required to weigh any specific matters over other matters. State v. Jones, 398 So.2d 1049 (La.1981); State v. Ates, 43,327 (La.App.2d Cir.8/13/08), 989 So.2d 259, writ denied, 08-2341 (La.5/15/09), 8 So.3d 581. There is no requirement that specific matters be given any particular weight at sentencing. State v. Tatum, supra, State v. Taves, 03-0518 (La.12/3/03), 861 So.2d 144; State v. Caldwell, 46,718 (La.App.2d Cir.11/2/11), 78 So.3d 799.
The second portion of the sentence requires that a determination be made regarding the constitutional exces-siveness of a sentence. A sentence violates La. Const. Art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless |18infliction of pain and suffering. State v. Smith, 01-2574 (La.1/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. *1193 Tatum, supra; State v. Weaver, 2001-0467 (La.1/15/02), 805 So.2d 166; State v. Lobato, 603 So.2d 739 (La.1992); State v. Washington, 46,568 (La.App.2d Cir.9/21/11), 73 So.3d 440, writ denied, 11-2305 (La.4/27/12), 86 So.3d 625. Normally, sentences at or near the maximum are reserved for the worst offenders and the worst offenses. State v. Cozzetto, 2007-2031 (La.2/15/08), 974 So.2d 665.
Pursuant to the relevant law, the trial court determined that the obstruction of justice offense in this case carries a sentence of not more than five years, with or without hard labor, and/or a find of not more than $10,000.00. See La. R.S. 14:130.1(B)(3). Since the defendant was declared a third felony offender, he was subject to a sentencing range of not less than two-thirds of the longest possible sentence for the conviction and not more than twice the longest possible sentence prescribed for a first conviction. See La. R.S. 529.1(A)(3). Therefore, the defendant faced a sentence that ranged from a minimum of 3.33 years to a maximum of 10 years. Accordingly, the trial court sentenced the defendant to 10 years’ imprisonment at hard labor, which is the maximum period of imprisonment permitted by the habitual offender statute.
| i/The record reflects that the trial court considered the fact that the defendant was a disabled war veteran who claims to suffer from post-traumatic stress disorder, as well as a brain injury, in reaching its decision. The trial court also noted the defendant’s extensive criminal record, which included 19 arrests amounting to 29 charges that resulted in three felony convictions and six misdemeanor convictions. The defendant also had been married three times, and he has 10 children with whom he does not maintain relationships.
The transcript from the sentencing hearing demonstrates the trial court adequately considered the guidelines of La. C. Cr. P. art. 894.1, and articulated its reasons for imposing the 10-year sentence. As noted by the trial court in his sentencing colloquy, the defendant’s aggravating circumstances greatly overpowered any mitigating factors. After a thorough review of the record, we find that the trial court gave proper consideration to all sentencing factors. The severity of the defendant’s sentence does not shock the sense of justice and is not a needless infliction of pain and suffering. This assignment is therefore without merit.

Error Patent

The trial court sentenced the defendant to 10 years at hard labor with the Department of Corrections consecutive to any other sentence, to be served without benefit of probation, parole, or suspension of sentence in accordance with La. R.S. 15:529.1(G). However, La. R.S. 15:529.1(G) requires any sentence imposed under its provisions to be at hard labor 11fiwithout benefit of probation or suspension of sentence. Further, La. R.S. 14:130.1(B)(3) provides that the offender shall be fined not more than $10,000.00, imprisoned for not more than five years, with or without hard labor, or both. Neither statute denies the offender the benefit of parole. Therefore, we amend the defendant’s sentence to delete the prohibition against parole.
CONCLUSION
For these reasons, we affirm the defendant’s conviction. Further, we amend the defendant’s sentence to delete the prohibition against parole, and affirm the sentence as amended.
CONVICTION AFFIRMED; SENTENCE AMENDED, AND AS AMENDED, AFFIRMED.