Judgment rendered December 14, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 54,852-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

LEDARRON DEMARION                          Appellant
CARTER

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 367,768

Honorable John Mosely, Jr., Judge

* * * * *

LOUISIANA APPELLATE PROJECT              Counsel for Appellant
By: Mary Constance Hanes

JAMES E. STEWART, SR.                     Counsel for Appellee
District Attorney

MEKEISHA SMITH CREAL
WILLIAM J. EDWARDS
ALEXANDRA L. PORUBSKY
Assistant District Attorneys

* * * * *

Before MOORE, STONE, and THOMPSON, JJ.

**MOORE, C.J.**

Charged with second degree murder, LeDarron Carter was found guilty of manslaughter, adjudicated a second felony offender, and sentenced to 60 years at hard labor without benefit of probation or suspension of sentence. He now appeals this sentence as excessive. We affirm.

## FACTUAL BACKGROUND

The shooting occurred on the afternoon of June 12, 2019, at "Country Corner," a four-plex apartment on Stoner Ave., near the intersection with Gilbert Dr. The victim, Deverous Holden, went there to help his cousin Markeisha Maywether move out of her upstairs apartment; other members of Markeisha's family also arrived to help with the move.

Another tenant of Country Corner was Tamara Baker, who lived downstairs; her boyfriend, the defendant, LeDarron Carter, was also there at the time.[1] After most of the group had gone upstairs to help Markeisha, Holden had some sort of interaction with Tamara, who was standing in the breezeway (there was testimony that Tamara had argued with Holden's girlfriend, Shema Turner, some weeks prior). The argument between Holden and Tamara escalated fast. Tamara picked up her phone and threatened to call somebody, but Holden knocked it out of her hand and slapped her in the face. Tamara then ran into her apartment, calling for Carter. At this point, Holden and Shema rushed toward their car, trying to escape.

Carter, however, stormed out of the apartment brandishing a handgun, ran after Holden, and started firing at him. Shema testified that she saw

_____

[1] Carter told investigators that he lived in the apartment with Tamara, but some other witnesses said he actually lived elsewhere.

Carter shoot Holden in the back two or three times; forensic evidence showed two gunshot wounds, the fatal one being in his side, under the ribcage.

Various people tried to come to Holden's aid as he lay facedown on Stoner Ave., but Carter waved or pointed the gun at them. These included Holden's sister, Kainshasa Holden; his godsister, Troinesha Eason, whom he told, "Who's next?", and Shema, whom he told, "You want it too?" Carter then fled the scene.

Surveillance video from a nearby house captured most of the incident, and several witnesses identified Carter in a photo lineup. Officers arrested him later that day at a house on East Jordan St. After being Mirandized, Carter consistently denied that he shot Holden, but admitted that if he caught anybody slapping his girlfriend, he would "beat them up." He maintained that his girlfriend, Tamara, actually fired the shots, and, at first, he said he never even touched the gun. Later in the interview, however, he said that he took the weapon from her, disposed of it nearby, and then fled the scene with her. The weapon was never recovered. Nobody saw Holden using a weapon, and none was found on or near his body.

## PROCEDURAL HISTORY

As noted, the state charged Carter with second degree murder. The matter came to trial over five days in September 2021. Witnesses included six of the people who were present at the apartment and either saw or heard the shooting; eight law enforcement officers; two forensics experts; and two other fact witnesses. The state also played the videos of Carter's and Tamara's interviews with police. The defense put on no evidence. The jury unanimously found Carter guilty of the responsive offense of manslaughter.

2

The state then charged Carter as a second-felony habitual offender, citing his 2013 guilty plea to carnal knowledge of juveniles, for which he received probation which ended within five years of this homicide. The court adjudicated him as charged. At a sentencing hearing, Holden's mother testified that his death was hard on her health and on Holden's four minor children. Carter addressed the court, admitting it was a "sad time" for the victim's mother, "but at the end of the day I did what I thought was right as a man."

The court acknowledged Carter's statement of remorse, but balanced it against his insistence on being justified: "A weapon used in a situation where the victim does not have a weapon, the victim is fleeing and is no longer a danger to the defendant or his family or friends, then that cannot be justified." The court also found that Carter "sought other people that were on the scene" and "there could have been multiple homicides," making him a danger to the community. The court noted Carter's "youthful age" but found his "reckless behavior" could not be excused. The court sentenced him to 60 years at hard labor, without benefit of probation or suspension of sentence.

Carter now appeals, raising one assignment of error: the sentence of 60 years for manslaughter, as a second-felony offender, is excessive under the circumstances.

## APPLICABLE LAW

An appellate court uses a two-pronged test to review sentences for excessiveness. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial court is not required to list every aggravating or mitigating circumstance, so long

as it adequately considered them in particularizing the sentence to the defendant. *State v. Smith*, 433 So. 2d 688 (La. 1983). The goal of Art. 894.1 is to articulate a factual basis for the sentence, not to achieve rigid or mechanical compliance with its provisions. *State v. Lanclos*, 419 So. 2d 475 (La. 1982); *State v. West*, 53,526 (La. App. 2 Cir. 6/24/20), 297 So. 3d 1081. There is no requirement that any specific factor be given any particular weight at sentencing. *State v. Taves*, 03-0518 (La. 12/3/03), 861 So. 2d 144. The important elements to be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation. *State v. Soco*, 441 So. 2d 719 (La. 1983); *State v. West*, *supra*. Where the record shows an adequate factual basis for the sentence imposed, remand is unnecessary even in the absence of full compliance with Art. 894.1. *State v. Lanclos*, *supra*; *State v. West*, *supra*.

Second, the appellate court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993). A sentence is deemed grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166. The sentencing court has wide discretion in imposing a sentence within statutory limits, and such a sentence will not be set aside as excessive in the absence of manifest abuse of that discretion. *State v. Williams*, 03-3514 (La. 12/13/04), 893 So. 2d 7.

Manslaughter carries a sentence of not more than 40 years at hard labor. La. R.S. 14:31 B. Because this sentence is for less than natural life, the second felony carries a sentence of not less than one-third the longest term and not more than twice the longest term for a first conviction. La. R.S. 15:529.1 A(1). The sentence range for manslaughter, as a second felony offense, is therefore 13⅓ to 80 years. The sentence shall be at hard labor without benefit of probation or suspension of sentence. La. R.S. 15:529.1 G.

**DISCUSSION**

Carter's sole assignment of error is that the sentence of 60 years for manslaughter, as a second felony offender, is excessive under the circumstances. He raises three arguments.

Carter first contends that the trial court not only failed to order a presentence investigation report, but "totally omitted" consideration of any of the factors in his history other than his youthful age. He suggests this is simply not adequate compliance with Art. 894.1 and does not individualize the sentence to the defendant. He argues the court should have also considered his marital status, dependents, family stability, employment, mental, emotional, and physical health, the circumstances of the offense, the likelihood that he will commit another crime, and the potential for rehabilitation through correctional services other than confinement. *State v. Crawford*, 410 So. 2d 1076 (La. 1982).

The sentencing colloquy, while perhaps minimal as to Carter's personal history, was adequate as to his criminal record and appropriate as to the facts of the offense and the gravity of his conduct. The record does not show how the confrontation started between Tamara and the victim in the

5

breezeway, but it clearly shows that Carter was not present when the victim knocked the phone out of her hand and slapped her in the face. Nevertheless, he impetuously blazed out of the apartment, pistol in hand, chased the victim trying to flee, and shot him from behind, not once but twice. As if that were not enough, Carter then pointed the pistol at the victim's girlfriend and female relatives, and threatened to shoot them as well. After this, he tossed the weapon and fled. At sentencing, he feebly protested that he did what he thought was right. The district court clearly expressed its dismay at the recklessness, violence, loss of life, potentially more than one life, and the implausible attempt to justify these appalling acts. The court's silence as to aspects of the offender's family situation, employment record, and emotional stability did not, on this record, diminish from the factual basis for the sentence. We find adequate compliance with Art. 894.1.

Carter next contends that his prior felony, carnal knowledge of juveniles, occurred when he was very young, involved no violence, was completely consensual, and he "successfully completed" his probated sentence for it. He suggests that this prior offense should not have weighed so heavily in the court's considerations.

As noted, there is no requirement that specific matters be given any particular weight at sentencing. *State v. Taves*, *supra*. Carter correctly shows that carnal knowledge of juveniles is, by definition, a crime of consent, La. R.S. 14:80 A, and not a crime of violence, R.S. 14:2 B, but the prior conviction dispels the suggestion that he led a law-abiding life for a substantial period of time before this offense. On this record, we do not find that the district court placed undue emphasis on the prior offense.

Finally, Carter urges that the sentence range was 13⅓ to 80 years, so the sentence of 60 years is, in reality, a life sentence, as he was only 19 years old when he shot Holden. He contends that this essentially negates the jury's determination that he was not guilty of second degree murder, which would have carried a mandatory life sentence. He submits that he should have "the opportunity to learn another way of behaving" and his life should not be "treated as disposable."

The record shows that Carter was, in fact, 25 years old when he shot Holden.[2] While 25 is still relatively youthful, it is not an age of immaturity and inability to grasp the consequences of one's actions. The district court explicitly considered Carter's age but found that other acts outweighed it. We perceive no abuse of discretion. The level of recklessness, harm to the victim, threat of harm to others, and reluctance to admit culpability place this case in the same spectrum with *State v. Gaines*, 52,536 (La. App. 2 Cir. 2/27/19), 266 So. 3d 948, *writ denied*, 19-00773 (La. 9/17/19), 279 So. 3d 379, and *State v. Carey*, 47,650 (La. App. 2 Cir. 2/27/13), 110 So. 3d 221, *writ denied*, 13-0726 (La. 11/1/13), 125 So. 3d 417, in which we affirmed sentences of 50 and 80 years for defendants convicted of manslaughter and adjudicated second-felony offenders. Carter's sentence, though severe, does not shock the sense of justice.

We also note that under R.S. 15:529.1 H, the sentence does not exclude the possibility of parole. The Supreme Court has recognized that the availability of early release is a valid factor in the review for

---

[2] His date of birth was June 14, 1993, and this offense occurred on June 12, 2019, making him two days shy of age 26.

excessiveness.  *State v. LeBlanc*, 09-1355 (La. 7/6/10), 41 So. 3d 1168; *State v. Green*, 418 So. 2d 609 (La. 1982).  We note that La. R.S. 15:574.4A(1)(b) permits Carter's qualification for parole after serving 75% of his sentence. On this record, we perceive no abuse of the district court's sentencing discretion.

## CONCLUSION

We have reviewed the entire record and find nothing we consider to be error patent.  La. C. Cr. P. art. 920(2).  For the reasons expressed, the conviction and sentence are affirmed.

**CONVICTION AND SENTENCE AFFIRMED**.