Judgment rendered March 1, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 54,906-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

CHARLES HEARNSBERGER                        Appellant

* * * * *

Appealed from the
Forty-Second Judicial District Court for the
Parish of DeSoto, Louisiana
Trial Court No. 19-CR-30361

Honorable Amy Burford McCartney, Judge

* * * * *

LAW OFFICE OF BRYCE J. DENNY            Counsel for Appellant
By: Bryce J. Denny

CHARLES B. ADAMS                       Counsel for Appellee
District Attorney

EDWIN L. BLEWER, III
LEA R. HALL, JR.
ETHAN P. ARBUCKLE
Assistant District Attorneys

* * * * *

Before STONE, COX, and ELLENDER, JJ.

**ELLENDER, J.**

Charles Hearnsberger appeals his sentence of 49½ years at hard labor (of which 19½ years were suspended) following his guilty plea to attempted molestation of a juvenile under the age of 13, La. R.S. 14:81.2 A(1) and D(1), and 14:27. For the reasons expressed, we affirm.

## FACTUAL BACKGROUND

Seventeen-year-old Hearnsberger, a student at North DeSoto High School, was doing odd jobs for his neighbor, DeSoto Parish Sheriff's Deputy Kyle Martin, and his wife, also a deputy. The Martins ran a sign shop and an event center on their property in Stonewall.

On the evening of May 27, 2019, Ms. Martin asked Hearnsberger to walk the couple's daughters, four-year-old PM and three-year-old KM, from the event center back to the house. Before they started, PM told Hearnsberger that she had to use the bathroom, so he stopped with the other child and let PM go. Moments later, PM asked him to help wipe her. According to subsequent interviews with PM, Hearnsberger entered the bathroom, got down on the floor lying face-up, lifted PM, and set her bare bottom on his face. He then stuck out his tongue and licked her private parts, all in full view of the younger sister. He then put PM's panties back on, walked the girls to the house, and, before they went in, told them not to tell anyone what had happened.

Later that evening, however, the girls told their parents what Hearnsberger had done in the event center restroom. Deputies took him into custody on a charge of first degree rape; ultimately he was indicted for molestation of a juvenile under the age of 13, La. R.S. 14:81.2 A(1) and D(1).

In an interview at the Sheriff's Office, Hearnsberger admitted what he did to PM, but asserted he was acting on a "voice in the back of [his] head" telling him he "had the opportunity to do something." He also stated that he had been bullied by schoolmates, physically abused by his mother, had been suicidal, and was now self-mutilating for "physical punishment."

His father got him released on bail and, in the following weeks, took him to Dr. Cheryl Marsiglia, a licensed psychologist in Shreveport; Dr. Katherine Smith, a psychiatrist at Brentwood Hospital in Shreveport; and to Dr. Bruce McCormick, another psychologist in Shreveport. The state obtained an order to have him examined by Dr. Lisette Wise, a psychologist in Shreveport.

In July 2021, the state amended the indictment to charge Hearnsberger with attempted molestation of a juvenile under the age of 13, R.S. 14:81.2 A(1) and D(1) and 14:27. Hearnsberger pled guilty as charged, with no agreement as to the precise sentence but with an acknowledged range of 0-49½ years.[1] The court ordered a presentence investigation report ("PSI").

## SENTENCING HEARING

At the sentencing hearing, in September 2021, Hearnsberger's father, John, testified he was a former DPSO deputy and the victim's mother had been his supervisor. He further disclosed that he had been married five times, and that Hearnsberger had been in his mother's custody, in Texas, until 2016, but he then took custody because the boy was being bullied at school. He added Hearnsberger had done well at North Desoto High School

---

[1] At the *Boykin* hearing, defense counsel stated that the range was "zero to forty-nine," but in the sentencing submission he acknowledged the maximum was actually 49½ years. Additionally, following defense counsel's statement, the court indicated that attempt requires one-half of the longest term of imprisonment, which the court previously told the defendant was 99 years. Defendant indicated he understood.

2

and had no discipline problems, but was socially isolated. After this incident, he was diagnosed by defense experts with autism, impulses to hurt himself, and was probably not able to live independently anymore. John testified that after these proceedings, he intended to take his son to Nacogdoches, Texas, and have him interdicted there.

The defense also offered extensive medical and school records. Notably, Dr. Marsiglia diagnosed Hearnsberger with autism disorder – mild to moderate range, without intellectual impairment, with language impairment, requiring substantial supports; ADHD – combined type, moderate to severe; major depressive disorder in partial remission; generalized anxiety disorder; and superior verbal intellectual functioning. She found that his "social judgment and reasoning skills are limited and insight and adaptive function reflect someone much younger."

Similarly, Dr. Smith, the psychiatrist, found "Autism spectrum disorder, Major Depressive Disorder, Generalized Anxiety Disorder," and PTSD.

The state called several witnesses. Dep. Kyle Martin, the victim's father, was understandably upset about what Hearnsberger had done to his young daughter. He called the claim of autism "unbelievably disrespectful to people with autism," and added, "Mind you, that wasn't even diagnosed * * * until after you got arrested. Give me a break." He said he accepted the guilty plea only to get the matter behind them, and insisted that PM was "a different kid than she was before."

Dep. Lori Martin, the victim's mother, elaborated that before, PM was outgoing and friendly, but now she is scared and "closed off," afraid to go to the bathroom by herself, and has been diagnosed with "precocious puberty."

3

She described that when the girls were walking back to the house that evening, she had seen Hearnsberger crouching down to whisper to PM, but she did not know about the incident until KM told her later. Further, when she confronted Hearnsberger about it, he said the accusation was "absolutely not true." She agreed that Hearnsberger "did not have a good social interaction with people his own age," but she did not believe that he was "mentally not knowing what is going on" when the incident occurred.

Two more DPSO deputies testified. Dep. Kelby Pearah testified that since this incident, the Martins' girls would not come over to visit with his girls, and he could think of no other reason than the incident with Hearnsberger. Then, Dep. Casey Hicks testified, admitting that he had considered killing Hearnsberger. He stated, rather vehemently, "I don't think he [Hearnsberger] should be sitting here today. * * * If I wasn't a cop, we wouldn't be sitting here today." Turning to Hearnsberger, he said, "Everybody is worried about him going to the DOC. You won't survive it, partner. No chance of it."

The state also called its own expert, Dr. Wise, the psychologist who had examined Hearnsberger for one day. She acknowledged the other doctors' reports, but she did not find support for their impressions of impulse disorder or anxiety disorder, and felt it would be unusual for autism not to be diagnosed sooner than it was here. She testified that Hearnsberger had exhibited the functionality to drive himself from Stonewall to her office, on Knight Street in Shreveport, and back for the one-day exam, and she saw no need for assisted living, just some treatment for mild depression.

Finally, the state offered video of PM's and KM's interviews at Gingerbread House, the children's advocacy center in Shreveport. PM

4

recounted, engagingly, how Hearnsberger lifted her up, sat her on his face, and licked her "coo-coo." KM described seeing this happen, and telling her mother about it later. At the conclusion of this testimony and evidence, the court took the matter under advisement.

## ACTION OF THE DISTRICT COURT

At sentencing, in December 2021, the court recapped the evidence it had reviewed. It acknowledged the diagnoses of autism, ADHD, major depressive disorder, etc., but found that "not all of these * * * are adequately supported by the record[.]" The court then cited the aggravating factors it had considered: the victim was particularly vulnerable because of her age, the defendant was a friend and employee of the family, the victim's sister saw the incident, and the defendant instructed the victim not to tell her parents. It also cited some mitigating factors: the defendant had no history of delinquency, and he was only 18 at the time of the offense.[2] However, further aggravating factors were that the victim's personality had changed, and the defendant got a substantial benefit from the plea bargain, as the original charge was first degree rape.

Taking all these facts into account, the court sentenced Hearnsberger to the maximum, 49½ years at hard labor, but suspended 19½ years, to be followed by five years' probation, with sex offender registration and a no-contact order. Hearnsberger filed a motion to reconsider, which the court summarily denied. This appeal followed.

---

[2] According to the personal data in the medical records and the PSI, he was actually 17.

5

## APPLICABLE LAW

An appellate court uses a two-pronged test to review sentences for excessiveness. First, the court must find that the sentencing court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The sentencing court is not required to list every aggravating or mitigating circumstance, so long as it adequately considered them in particularizing the sentence to the defendant. *State v. Smith*, 433 So. 2d 688 (La. 1983). The goal of Art. 894.1 is to articulate an adequate factual basis for the sentence, not to achieve rigid or mechanical compliance with its provisions. *State v. Lanclos*, 419 So. 2d 475 (La. 1982); *State v. West*, 53,526 (La. App. 2 Cir. 6/24/29), 297 So. 3d 1081. There is no requirement that any specific factor be given any particular weight at sentencing. *State v. Taves*, 03-0518 (La. 12/3/03), 861 So. 2d 144. As a general rule, maximum or near-maximum sentences are reserved for the worst offenders and worst offenses. *State v. Cozzetto*, 07-2031 (La. 2/15/08), 974 So. 2d 665. However, when the defendant has pled guilty to an offense that does not adequately describe his conduct or has received a significant reduction in sentencing exposure through a plea bargain, the sentencing court has great discretion in imposing even the maximum sentence for the pled offense. *State v. Guzman*, 99-1753 (La. 5/16/00), 769 So. 2d 1158; *State v. Yetman*, 54,883 (La. App. 2 Cir. 1/11/23), __ So. 3d __.

Second, the appellate court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993). A sentence is deemed grossly

disproportionate if, when crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166. The sentencing court has wide discretion in imposing a sentence within statutory limits, and such a sentence will not be set aside as excessive in the absence of manifest abuse of that discretion. *State v. Williams*, 03-3514 (La. 12/13/04), 893 So. 2d 7. The reviewing court may consider a comparison of the punishment in the appealed case with sentences imposed for similar crimes. *State v. Fruge*, 14-1172 (La. 10/14/15), 179 So. 3d 579; *State v. Durham*, 53,922 (La. App. 2 Cir. 6/30/21), 321 So. 3d 525.

Molestation of a juvenile when the victim is under the age of 13 carries a sentence at hard labor of not less than 25 years and not more than 99 years, including at least 25 years without benefits. La. R.S. 14:81.1 D(1). The penalty for an attempt is imprisonment in the same manner as for the offense attempted, with imprisonment that does not exceed one-half of the longest term prescribed for the offense attempted, La. R.S. 14:27 D(3). In this case, the maximum sentence was 49½ years at hard labor.

## DISCUSSION

Hearnsberger raises three assignments of error. He concedes that he "committed an act that everyone finds to be reprehensible," but maintains the sentence raises some "troubling issues" and is clearly excessive. He also concedes the two-step review of sentences for excessiveness, under *State v. Dorthey*, *supra*, and the abuse of discretion standard of review, under *State v. Williams*, *supra*.

By his first assignment, Hearnsberger contends the court failed to consider the "nonhyperbolic testimony by law enforcement that killing the

7

defendant was contemplated" as well as its "taunting [of] the defendant about not surviving prison." He argues this evidence accentuates the mitigating factor of Art. 894.1 B(31), "imprisonment of the defendant would entail excessive hardship to himself," by showing that jail time for this defendant is tantamount to a death sentence.

The state responds that Hearnsberger's contention about Dep. Hicks's testimony is inconsistent: if these remarks were "problematic," then the court could not have erred by failing to consider them.

The district court did not explicitly state whether it considered the contested testimony, but the selection of the maximum sentence (subject to about 40% suspension) shows a full apprehension of the gravity of the offense and the public's likely reaction of outrage when they learned about it. The contested testimony might reflect poorly on this witness's temperament as a law enforcement officer, but the district court was in the best position to decide whether one witness's personal animosity should militate in favor of a longer or shorter sentence. In light of the long and thoughtful reasons given, we cannot say the district court failed to consider this testimony or assigned it too little (or too much) weight.

By his second assignment, Hearnsberger urges the court erred in ignoring all the medical evidence presented by both the state and defense concerning his autism and mental health issues. Again citing Art. 894.1 B(31) and, now, B(34), "relevant mitigating circumstances," he argues these diagnoses will make it hard for him to survive in prison. He believes that both his expert, Dr. Marsiglia, and the state's, Dr. Wise, agreed on the major findings but the court, inexplicably, found their statements not adequately supported by the record. Further, he submits there is no record evidence that

8

the diagnoses are contrived or that he poses a risk for future sexual misconduct. He concludes that the type of "supervision rendered by his father" since bonding out is clearly adequate.

The state responds that the court did not fail to consider the medical evidence; rather, it declined to assign it the weight that the defense felt it should receive. The state reiterates the court was under no obligation to assign any particular weight to any specific sentencing factor, *State v. Williams*, 34,370 (La. App. 2 Cir. 2/28/01), 781 So. 2d 682, and the court's assessment of the medical evidence was reasonable.

We have closely examined the expert reports and testimony. While the defense experts' views share some features with the state's, contrary to defendant's argument, the differences are salient enough to support the district court's conclusion. Notably, Dr. Wise examined Hearnsberger and did not find impulse disorder, anxiety disorder, PTSD, or a head injury; all she found was mild depression. She also noted he understood what she was asking of him, appeared to understand the legal proceedings against him, and was cognitively functional enough to drive himself from Stonewall to an office in east Shreveport. In short, she saw nothing resembling what Hearnsberger's father described, a young man needing constant supervision, being kept "under his [father's] thumb," and a candidate for legal interdiction. This record offers sufficient facts for the district court to reject Dr. Smith's dire prediction that Hearnsberger cannot live independently without "a myriad of supports in place." This assignment does not present reversible error.

By his third assignment, Hearnsberger urges the court imposed a sentence that was incomparably harsh compared to similarly situated DeSoto

Parish defendants. He contends this particular district court judge has proved herself "to be a tough sentencing judge on sex cases." He cites *State v. Muniz*,[3] in which a 15-year-old pled guilty to molestation (not attempt), after full intercourse with a 5- or 6-year-old girl and with psychiatric evidence that he was at risk for similar future misconduct; that defendant received 25 years, only five without suspension. He also refers to *State v. Remedies*,[4] in which the defendant pled guilty to molestation, with an eight-year cap, and the court imposed eight years, four suspended. Hearnsberger concludes by asking this court to reduce his sentence "to one that is appropriate" or to "remand this case to the trial court for further proceedings."

The state does not address the third assignment of error.

Hearnsberger correctly shows the court may consider a comparison of the punishment in the appealed case with those imposed for similar crimes. *State v. Fruge*, *supra*; *State v. Durham*, *supra*. By the measure of *Muniz* and *Remedies*, and in the absolute sense, the instant sentence appears very harsh. However, the district court was also entitled to consider the benefit of the plea bargain. *State v. Guzman*, *supra*; *State v. Yetman*, *supra*. As originally charged with first degree rape, Hearnsberger faced a mandatory life without benefits, La. R.S. 14:42 D(1); as originally indicted for molestation of a juvenile under the age of 13, he faced a sentence range of 25 to 99 years at hard labor, including at least 25 years without benefits, La. R.S. 14:81.2 D(1). His conduct might have supported a conviction on the former, and

---

[3] Cited in his appellate brief as DeSoto docket 16-CR-02846.

[4] Cited in his motion to reconsider as DeSoto docket CR-13-24772.

10

certainly would have supported a conviction on the latter. By the plea bargain, he faced a maximum of 49½ years, which is very long but still an improvement over his initial exposure. The court suspended roughly 40% of the sentence, resulting in an actual time of 30 years, notably less than his initial exposure.

The court also considered the harm to this four-year-old victim: after this incident, her personality changed, she became less outgoing, was afraid to go to the bathroom by herself, and showed signs of precocious puberty. Our viewing of the Gingerbread House videos confirms some level of effect on the victim and her three-year-old sister, who witnessed the incident. These facts militated in favor of a longer sentence.

In light of the comparison with other sentences, the benefit of the plea bargain, the effects on this very young victim, and the youth and psychological status of the defendant, we cannot say this sentence shocks the sense of justice. *State v. Weaver*, *supra*.

Finally, we have reviewed the entire record and find nothing we consider to be error patent. La. C. Cr. P. art. 920 (2).

## CONCLUSION

For the reasons expressed, we affirm the conviction and sentence.

**AFFIRMED.**

11