MOORE, J.
It Charged with attempted second degree murder, Billy T. Singleton was found guilty of aggravated battery and sentenced to eight years at hard labor. He now appeals, urging the evidence was insufficient to convict and the sentence is excessive. We affirm.

Factual Background

Singleton’s victim was his wife, Sheron-da. Sheronda testified that in October 2010, their relationship was “not good,” and she recently told him she wanted a divorce because he was having an affair with another woman. Singleton admitted the affair but insisted he had broken it off about two months earlier.
On October 12, 2010, Singleton drove Sheronda from their home in Bernice, ostensibly to go to a car dealer in Minden and make a down payment on a 2007 Malibu. However, Singleton turned off Hwy. 2, saying he wanted to check on his mother’s “sinking” grave; Sheronda protested that he was not going the right way to the cemetery, and he replied, “It’s gonna be over.” He turned onto a remote oilfield access road, stopped the car and then pulled a .38 cal. RG revolver from under the driver’s seat. The two wrestled over the gun and, ultimately, three shots were fired, but the pair gave divergent accounts of what happened.
Sheronda testified that she never got possession of the gun, but jumped out of the car, begging him not to shoot her; he then exited the car, ran around the back and confronted her on the passenger side. Despite her pleas, he shot her in the chest. He then turned the gun on himself and pulled the trigger, but it would not fire. He pointed the gun at the ground and tried | ¡.again, and this time it fired; he then pointed it' at his own chest and fired successfully. He dropped the gun; Sher-onda picked it up and threw it into the woods. Singleton then took out his cell phone and called his sister; he handed the phone to Sheronda, and she told the sister it was true, Singleton had shot her and *308 then shot himself.[1] She was certain that both shots were fired outside the ear. After she tossed the gun, Sheronda called 911.
Singleton testified that they had been arguing, in part over her cell phone; he reached under the seat where he had stashed a gun, grabbed it and placed it on the seat between them. He insisted he did this only to scare her, but she reached for the gun and they wrestled over it. She got her hand on the handle and the gun discharged accidentally, striking her. He jumped out of the car and ran to the passenger door to check on her, but she shot him point-blank through the open window. He fell and lost consciousness. He maintained that Sheronda’s bullet wound was purely accidental.
Shortly after 4 p.m., Claiborne Parish 911 received a call from Sheronda reporting that Singleton had shot her and then turned the gun on himself. Because they were so deep in the woods, the operator told Sheronda to get in the car and “lay on the horn” to help the responders find them. EMTs arrived, and Sheronda and Singleton were airlifted to LSU Medical Center in Shreveport.
Detective Keel of the Claiborne Parish Sheriffs Office arrived shortly after the EMTs. He saw Sheronda standing in the front passenger door and Singleton lying on the ground. He did not interview them except to ask |3Sheronda where she had thrown the gun; she pointed into the woods. With the aid of a canine officer, they located the revolver, which had three cartridges fired from the chamber. Det. Keel found a bullet hole in the passenger door armrest and a bullet inside the door itself; it appeared that the bullet had entered the car door from a downward angle. He testified there was no evidence the gun had been fired inside the car. He verified lab reports showing the bullet recovered from the car door had been fired from the RG revolver found in the nearby woods.
Dr. Mary Edens, a professor of emergency medicine at LSU, treated both victims at the LSU emergency room. She testified that Sheronda had one gunshot wound to the right side of her chest, below the clavicle, and another to the right del-toid; because the wound was close to the lung and several arteries, it could have been lethal. Singleton had a wound to the left side of his chest, and another to the scapular area on his back; he had a collapsed lung. Because Dr. Edens had no training in forensic medicine, she would not state which wounds were entrance or exit.
It transpired that five days before the shooting, Singleton had been at the Union Parish Courthouse when he approached Det. Derian Brown, an investigator with the Union Parish Sheriffs Office, and said he “had a friend that he worked with that told him [Singleton] that he was going to shoot his wife and then turn around and kill himself.” Singleton then asked Det. Brown, “Would my friend get in trouble if — by making these kind of threats toward his wife[?]” Det. Brown replied yes, he could get in trouble if she reported it, and asked for the name of the person Singleton was preferring to, but Singleton replied he “did not want to get his friend in trouble,” and then left the building. Det. Brown testified that at the time, he did not realize Singleton might have been talking about himself. Singleton acknowledged talking to Det. Brown, and admitted he “was lying about the friend,” but maintained he had really been talking about his ex-girlfriend.
The state charged Singleton by bill of information with attempted second degree *309 murder and aggravated assault with a firearm; however, the state dismissed the aggravated assault charge and proceeded to trial before a 12-member jury in May 2012. After a three-day trial, the jury returned a verdict of guilty of the lesser included offense of aggravated battery. In July 2012, the court sentenced him to eight years at hard labor, with credit for time served (about 1 % years). He filed a motion to reconsider sentence, which was denied.
Singleton now appeals, raising two assignments of error.

Discussion: Sufficiency of the Evidence

By his first assignment of error, Singleton urges the state failed to present sufficient evidence to support the verdict of guilty of aggravated battery. He concedes that the case hinges on credibility— his version of the shootings versus Sheron-da’s — but contends that her testimony was “so inconsistent and incredible as to warrant review and acquittal” under the Jackson standard, as the courts stated in dictum in State v. Richardson, 425 So.2d 1228 (La.1983), and State v. Lewis, 577 So.2d 799 (La.App. 2 Cir.), writ denied, 582 So.2d 1304 (1991). In support, he shows that there was no evidence of any prior physical violence between him and Sheron-da, 15and no evidence that he was referring to himself when he spoke to Det. Brown at the Union Parish courthouse, thus defeating the proof of motive to harm Sheronda. He also argues that the bullet recovered from the door was traveling in a downward direction, a forensic fact inconsistent with Sheronda’s claim that he shot her while she was standing next to the car; he suggests the more logical finding would be that the gun discharged in the car during a struggle, as he testified. He concludes that the proof of an accident undermines the verdict of aggravated battery.
The standard of appellate review for sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the factfinder. State v. Pigford, 2005-0477 (La.2/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App. 2 Cir. 1/14/09), 1 So.3d 833, writ denied, 2009-0310 (La.11/6/09), 21 So.3d 297. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Dorsey, 2010-0216 (La.9/7/11), 74 So.3d 603, State v. Knight, 45,231 (La.App. 2 Cir. 5/19/10), 36 So.3d 1163, unit denied, 2010-1425 (La.1/14/11), 52 So.3d 899. A reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Sosa, 2005-02131 (La.1/19/06), 921 So.2d 24; State v. Cunningham, 46,664 (La.App. 2 Cir. 11/2/11), 77 So.3d 477. In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient to support a factual conclusion. State v. Higgins, 2003-1980 (La.4/1/05), 898 So.2d 1219; State v. Cunningham, supra.
Aggravated battery is a battery committed with a dangerous weapon, La. R.S. 14:34. As it pertains to this case, battery is the intentional use of force or violence upon the person of another, La. R.S. 14:33. A gun qualifies as a dangerous weapon in that it is an “instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm.” La. *310 R.S. 14:2(3); State v. Bonier, 367 So.2d 824 (La.1979); State v. Bowers, 39,970 (La. App. 2 Cir. 8/19/05), 909 So.2d 1038.
The jury obviously received conflicting accounts of the incident and chose to accept Sheronda’s version that she was outside the car, standing next to the passenger door, when Singleton ran around the back of the car and shot her from a vantage point somewhere on the passenger side. On close review, we find no internal inconsistency or conflicts with physical evidence that would warrant rejecting her testimony. Notably, she testified that Singleton fired three shots, and Det. Keel found three rounds missing from the chamber; she also testified that he fired all shots while standing outside the car, and Det. Keel found no evidence that the gun had been fired inside the car. This evidence contradicted Singleton’s testimony that only two shots were fired, both inside the car. His contention that the first shot 17went off accidentally, while they grappled with his hands on the barrel and hers on the handle, and the bullet somehow struck her in the upper chest, was improbable enough for the jury to reject it. His admitted extramarital affair and his odd question to Det. Brown in Union Parish strongly suggest that he was at least contemplating the kind of double shooting that ultimately occurred five days later, and proves the general intent necessary to convict of aggravated battery. In short, this record does not refute the jury’s decision. While we cannot completely reconcile the bullet holes in the armrest (apparently without an entry hole through the outer body of the door), this by itself provides no basis to disturb the jury’s rational credibility call. This assignment of error lacks merit.

Excessive Sentence

By his second assignment of error, Singleton urges the district court imposed an excessive sentence. He concedes that the court “did reference and consider” certain mitigating factors, but argues that it failed to give them adequate weight. In support, he cites the “childhood travesty of his mother murdering his father when he was six months old”; the fact that his one prior felony was 22 years before sentencing, and otherwise he had only misdemeanors; his employment and good work history; and a character reference from the chaplain of the Claiborne Parish Detention Center. He concludes that a less severe sentence would serve the needs of justice.
Appellate review of sentences for excessiveness is a two-pronged inquiry. First, the record must show that the sentencing court complied with La. C. Cr. P. art. 894.1. The court need not list every aggravating or |Rmitigating factor so long as the record reflects that it adequately considered the guidelines. State v. Marshall, 94-0461 (La.9/5/95), 660 So.2d 819; State v. Linnear, 44,830 (La.App. 2 Cir. 12/9/09), 26 So.3d 303. When the record shows an adequate factual basis for the sentence imposed, remand is unnecessary even in the absence of full compliance with the article. State v. Lobato, 603 So.2d 739 (La.1992); State v. Linnear, supra. No sentencing factor is accorded greater weight by statute than any other sentencing factor. State v. Taves, 2003-0518 (La.12/3/03), 861 So.2d 144; State v. Linnear, supra.
The second prong is constitutional excessiveness. A sentence violates La. Const. Art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless imposition of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993). A sentence is deemed grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense *311 of justice or makes no reasonable contribution to acceptable penal goals. State v. Guzman, 99-1753 (La.5/16/00), 769 So.2d 1158. The sentencing court has wide discretion in imposing a sentence within statutory limits, and such a sentence will not be set aside as excessive in the absence of manifest abuse of that discretion. State v. Williams, 2003-3514 (La.12/13/04), 893 So.2d 7; State v. Davis, 47,599 (La.App. 2 Cir. 1/16/13), 108 So.3d 833.
At the time of this offense, the penalty for aggravated battery was a fine of not more than $5,000 and imprisonment, with or without hard labor, |9for not more than 10 years, or both. La. R.S. 14:34 B.[2]
The record reveals adequate compliance with Art. 894.1, as the district court expressly referred to the guidelines and recited the factual considerations relevant to the case. The court first noted that this was a crime of violence committed with a firearm, and dismissed Singleton’s claim that he pulled the pistol “just to scare his wife.” Singleton’s criminal history — a 1990 conviction for sexual battery, pled down from simple rape, and a 2003 misdemeanor conviction for disturbing the peace, pled down from simple battery— showed a propensity for violence against women. In mitigation, the court cited Singleton’s “unusual childhood caused by his mother’s murdering his father” when Singleton was six months old, and the fact that Sheronda had no claim for restitution. This shows an adequate consideration of aggravating and mitigating factors.
On the question of constitutional exces-siveness, we find that the atrocious nature of the offense, the scheme and apparent intent to kill Sheronda, and the persistent denial of guilt all serve to support the sentence and negate any claim of dispro-portionality. This assignment lacks merit.

Conclusion

We have reviewed the entire record and find nothing we consider to be error patent. La. C. Cr. P. art. 920(2).
The conviction and sentence are affirmed.
AFFIRMED.

. The sister’s name was given at trial but neither side called her to testify.

. A 2012 amendment increased the penalty in circumstances not present in this case.