Judgment rendered August 28, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,547-KH

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Plaintiff-Respondent
(CITY OF BASTROP)

versus

RICKEY D. NELSON                            Defendant-Applicant

* * * * *

On Application for Writs from the
Bastrop City Court for the
Parish of Morehouse, Louisiana
Trial Court Nos. 220218, 220219, 220464,
221070, 221071, 221284, and 221285

Honorable Phillip Murray Lester, Judge

* * * * *

RICKEY D. NELSON                            Pro Se

J. RODNEY PIERRE                            Counsel for Respondent
Bastrop City Prosecutor

* * * * *

Before STONE, COX, and ELLENDER, JJ.

**COX, J.**

This supervisory writ arises from the Bastrop City Court, Morehouse Parish, Louisiana. Rickey D. Nelson sought supervisory review of multiple misdemeanor convictions and sentences. We granted this writ to docket on March 14, 2024. For the following reasons, we grant the writ, reverse Nelson's convictions for failure to appear, and affirm his remaining convictions.

**FACTS**

*Incident No. 1- Gas*

On June 2, 2021, Nelson's gas meter was locked by Atmos Energy due to an unpaid gas bill of $1,091.21. Atmos later observed that gas was still being used at Nelson's residence on Van Frank Avenue. On February 18, 2022, James Hawkins, an Atmos Energy employee, went to Nelson's residence to check the meter and found that the locking plate was removed and destroyed. Hawkins reported the theft and property damage to the police. Bastrop Police Officer Ryan McDaniel responded to the residence and verified the theft. Nelson was arrested later the same day. Nelson was originally charged in Bastrop City Court Docket No. 220218 with theft of gas in violation of ordinance 8-93; and Docket No. 220219 with criminal damage to property (the gas meter lock) in violation of La. R.S. 14:56.

Nelson bonded out and was given written notice to appear for arraignment on March 22, 2022. Nelson failed to appear on March 22 and was charged with failure to appear, in violation of La. R.S. 14:110.1. That same day, Nelson's bill of information was amended, combining the charges for theft of gas and criminal damage to property.

*Incident No. 2- Water*

On March 22, 2022, Ann Minor discovered a water hose attached to a water meter at her father's residence on Biddison Avenue, located on the block behind Nelson's residence. The hose ran through a hedge and was attached at the other end to Nelson's house. Minor previously had the water meter removed because her father was no longer residing in the home. Minor called the Morehouse Parish Sheriff's Department and the water utility company, People's Water Service, who found that an unknown water meter was installed. Nelson was subsequently arrested in Docket No. 220464 for theft of water, in violation of ordinance 8-93.

*Guilty plea*

On May 24, 2022, Nelson and the city court signed a judgment of conviction, sentencing order, probation order, arrest warrant, and notice of rendition of civil judgment. Nelson pled guilty to all charges. He was sentenced to 120 days in jail with 110 days suspended. He was ordered to pay the following fines: theft of water- $150 plus cost or 45 days in jail; theft of utilities- $250 or 60 days in jail; criminal damage to property- $150 or 45 days in jail; and failure to appear- $250 or 10 days in jail. He was also ordered to pay $250 as a condition of probation in accordance with La. C. Cr. P. art 895.1(B)(2), an additional $250 probation fee, and $1,091 in restitution to Atmos Gas as a condition of probation. Nelson was given credit for one day.

On the same day, an amended judgment of conviction and sentencing order was signed by the city court but not signed by Nelson. The amended judgment states that Nelson was sentenced to 105 days in jail for each charge, with 15 days suspended, and unsupervised probation for six months.

2

His fines were amended to the following: theft- $250 or 75 days in jail; damage to property- $150 plus cost or 75 days in jail; theft- $150 plus cost or 75 days in jail; and failure to appear- $250 or 10 days in jail. Nelson's probation fees and restitution remained the same. His sentence included the condition that he serve 90 mandatory days for each theft charge and criminal damage charge "for a total of 270 mandatory days- day for day on all jail time." His sentences were set to run consecutively.

On June 15, 2022, Nelson filed a motion to reinstate sentence, or alternatively, withdraw his guilty pleas, complaining that he was never advised of his rights or the sentencing ranges for the offenses charged, and his sentence was subsequently amended in his absence. The motion was granted on June 28, 2022, and the guilty pleas were withdrawn. Because Nelson already served the sentence for his charge of failure to appear, that plea was not included. The city court appointed counsel for Nelson.

On July 25, 2022, the prosecution filed separate amended bills of information for theft of utilities (gas) in 220218 and criminal damage to property in 220219. The prosecution filed another bill of information in Docket No. 220464, charging Nelson with theft of utilities (water). The city court set all the charges for trial on August 16, 2022.

*Incident No. 3- Fire Hydrant*

On July 21, 2022, People's Water reported an issue with a fire hydrant to police. People's Water representatives and law enforcement found that the fire hydrant, adjacent to Nelson's property, had been modified and a hose attached to it that ran from the hydrant to Nelson's residence. Nelson was charged in Docket No. 221270 for theft of water, in violation of

ordinance 8-93 and Docket No. 221071 for criminal damage to property (the fire hydrant) in violation of 14:56.

*Motion to Quash*

On July 27, 2022, Nelson filed a motion to quash the amended bills of information filed in Docket Nos. 220218 and 220219, objecting on grounds that the prosecution was not authorized by the court to sever the charges under La. C. Cr. P. art. 495.1 after the charges arising from the same incident had been appropriately joined under La. C. Cr. P. art. 493. Nelson alleged that the prosecution was attempting to avoid the provisions of La. C. Cr. P. art. 493.1, which limits the penalty range for misdemeanor offenses charged in a single bill of information to no more than six months and a maximum fine of $1,000 or both. Nelson also alleged that the prosecution was attempting to avoid litigating the matters before a jury. Nelson argued that the matter should proceed under the consolidated bill of information filed on March 22, 2022. The *clerk of court* signed the Order setting the matter for contradictory hearing on August 9, 2022.

On August 9, 2022, the hearing on the motion to quash was upset and continued to September 20, 2022, for status hearing, despite the trial date in those matters being set for August 16, 2022. Notice of the September 20, 2022, hearing was sent to Nelson's attorney on August 9, 2022. On the same date, the clerk of court issued a subpoena to Nelson, ordering him to appear in court on September 20, 2022.

On August 16, 2022, while in jail, Nelson was served the subpoena for the September 20, 2022, hearing on the motion to quash. Also on August 16, the parties appeared in court. Nelson's attorney was unable to appear in court for trial due to medical issues and was scheduled to be out for several

4

weeks.  The trial court ordered the matter reset for a status hearing on September 27, 2022, stating:

> So, we will postpone, the trial will happen, we will find out September 27th when he is back at that time.  And then will reset that trial date and we will have that hearing that he has filed as it relates to that motion and then the prosecutor and Mr. McElroy will set a trial date as it relates to this.  At that point, new subpoenas will be issued, and we will let you know when that is going to be, you know, based upon that.

The hearing date and subpoena for September 20, 2022, did not get recalled or changed.

On September 20, 2022, Nelson's substitute counsel was absent for the motion to quash hearing.  Nelson bonded out of jail and also failed to appear at the hearing.  The trial court, Judge Glen Strong, *Pro Tempore*, presiding, ordered Nelson's bonds forfeited and issued a bench warrant charging him with failure to appear in Docket No. 220218 on the charge of theft and separately in Docket No. 220219 on the charge of damage to property.  The State moved to dismiss the motion to quash under La. C. Cr. P. art. 523 considering the absence of both Nelson and his attorney.  The trial court granted the State's motion and dismissed the motion to quash the bill of information.  The status hearing for September 27, 2022, was maintained.

On September 27, 2022, Nelson appeared in court with substitute counsel, and the trial was reset for October 25, 2022.  On October 25, 2022, the State had an unavailable witness, so the trial was reset for December 6, 2022.  On December 6, 2022, the State was unavailable and did not appear in court.  Nelson also did not appear, and while trial could not be held due to the prosecutor's absence, the trial court issued a bench warrant for Nelson's

failure to appear and ordered his bonds recalled. Nelson appeared in court a few minutes later. The trial was reset for January 24, 2023.

*Trials*

Trial in all seven separate matters was held sequentially on January 24, 2023. After the evidence was taken in all matters, the trial court rendered its verdicts and sentenced Nelson.

*Docket Nos. 220218 and 220219- Gas*

James Hawkins, an employee with Atmos Energy, testified that the gas is read by a "smart point satellite" and the satellite showed gas usage at Nelson's residence, even though a lock was previously placed on Nelson's meter on June 2, 2021, for lack of payment. Hawkins testified that he observed that the lock was "grinded off," the meter was active, and the meter had gas flowing through it. Hawkins testified that "customer assist" told him the lock was valued at $250. Hawkins did not have any documentation confirming the lock's cost or value.

Nelson's gas statement for the period ending June 27, 2021, was entered into evidence. The due date listed on the statement was July 9, 2021, and the amount owed was $1,091.21. Hawkins testified that was the amount owed as of June 2021, when the gas was shut off. Hawkins testified that between June 2, 2021, and February 18, 2022, he guessed that "at least a couple 100" cubic feet of gas was used through Nelson's gas meter and probably cost about $10 per cubic foot. Hawkins testified that he did not see Nelson grind the lock off, and he did not know who did it.

Ryan McDaniel, who formerly worked for Bastrop City Police, testified that he was dispatched to Nelson's home on February 18, 2022, after a theft complaint from Atmos Energy. He testified that the lock on the

6

gas meter was cut off, and he was told that Nelson ground off the lock. Officer McDaniel attempted to contact Nelson inside the home, but no one answered the door. Nelson was later detained during a traffic stop. Nelson was arrested, but he denied having gas service. After reviewing Nelson's final bill, the officer said it appeared that the amount of $1,091.21 represented the amount due when the gas was cut off in 2021, not the gas usage that was reported to him as theft.

In closing arguments, the defense argued that the State failed to present any evidence that Nelson damaged the lock or the value or cost of the lock in support of the charge for criminal damage to property. The defense asserted that there was not any evidence showing the amount and value of the gas allegedly taken after Atmos Energy shut off the gas in June 2021. The defense argued that the State failed to prove beyond a reasonable doubt that Nelson committed criminal damage to property or theft of utilities.

In response, the State argued that Hawkins' testimony established that gas was used after service ended in June 2021, and the circumstantial evidence showed that Nelson was guilty—Nelson was the only resident at that location, and the last gas meter account was in his name. The State also argued that Nelson was the person who enjoyed the benefit of the misappropriation.

The defense argued that "this is Atmos attempting to use the criminal law to collect a perhaps valid debt that was accrued while the account was still active, up until June 2, 2021."

*Docket No. 220464- Theft of Water*

Ann Minor testified that her father owns the residence on Biddison Avenue located behind Nelson, but her father was living in a nursing home, and his home was unoccupied. On March 22, 2022, Minor observed a hose running from the water main, up the driveway, through the hedge, and to Nelson's home. After making the same observation, Minor called the Sheriff's department, who responded along with an employee of People's Water. Minor testified that she did not know who installed the new water meter, and she observed water spouting where the hoses were connected. Jamie Sharpton is Minor's sister, and her testimony corroborated Minor's testimony.

Richard Pace, Assistant Police Chief for the Bastrop Police Department, testified that he was dispatched to the residence on Biddison Avenue for theft of utilities. He stated that a water hose was hooked up to the water main, ran through a wood line, and connected to Nelson's residence. He testified that he tried to contact Nelson at Nelson's residence but was unsuccessful.

Ira Dennis Jennings testified that he is employed by People's Water. He stated that he was dispatched to Biddison Avenue and observed a water hose connected to the water main. He testified that he disconnected the water hose and retired service to the Biddison Avenue residence.

Doil Nelson, Jr., another employee of People's Water, testified that the last water account at Nelson's residence was in Nelson's name, but Nelson's water account was closed in 2020.[1]

---

[1] Doil Nelson testified that he is not related to Rickey Nelson.

The State and the defense rested. The defense argued that there was no testimony or evidence presented establishing that Nelson lived at the address at the time of the March 2022 incident and no evidence or testimony presented establishing that Nelson was the one who ran the hose from the Biddison Avenue residence to the other residence and turned on the water valve. The defense argued that the State failed to prove, beyond a reasonable doubt, that Nelson was guilty of the theft of water.

The State argued that the evidence established that the water at the Biddison Avenue residence was previously cut off and the meter removed, but someone installed a new meter, turned the water back on, and ran a hose from the meter to Nelson's residence. The State replied that the last water account at Nelson's residence was in Nelson's name, and under the circumstances, Nelson was the only person who benefited from the misappropriation of water from the Biddison Avenue residence.

*Docket Nos. 221070 and 221071- Fire Hydrant*

Sergeant Katelynn Gray, with the Bastrop Police Department, testified that on July 21, 2022, she was dispatched to the corner of Van Frank and Dewing in response to a call from People's Water that someone drilled into a fire hydrant, welded on a spigot, and ran a water hose from the hydrant toward the back side of Nelson's residence. She stated that she tried knocking on the doors and windows, but no one answered. She testified that she requested a warrant for Nelson's arrest and called the fire department about the hydrant.

Ira Jennings, with People's Water, testified that he responded to the scene on behalf of People's Water, and he observed a brass cap soldered on the fire hydrant, with a water hose connected to it. He stated that the water

9

hose ran from the fire hydrant, through a vacant lot, through a fence, to the back of Nelson's residence on Van Frank Avenue. Jennings testified that he found an 18-inch aluminum pipe wrench at the fire hydrant. Jennings testified that there was scarring on the hydrant from the teeth of the pipe wrench, and these marks were caused by something other than the tools used by the fire department or the water utility.

Timothy Williams, Chief of the Bastrop Fire Department, testified that he responded to the complaint about the fire hydrant. He stated that the original fire hydrant cap was removed and replaced with another cap that was modified with a water hose connection and had a water hose attached to it. He testified that a pipe wrench was on the ground beside the hydrant. Chief Williams testified that normally a hydrant wrench, specifically designed to fit the hydrant, is used to turn on the water. He stated that there were teeth marks on the fire hydrant nut, indicating a different tool was used to turn on the water.

The State and the defense rested. The defense argued that there was no evidence or testimony presented establishing that Nelson was the person who modified the fire hydrant and ran the hose to his residence. The defense argued that the State failed to place Nelson at or near the scene and did not meet its burden to prove that Nelson was guilty of theft of water or criminal damage to property.

The State asserted that the court could take notice of testimony given previously in one of the other docket numbers—that Nelson was the only person to have a utility account at his residence. The State also referred to Sgt. Gray's testimony that she saw Nelson driving the truck parked at his residence. The State maintained that using the water from the fire hydrant

10

without permission of the owner amounted to misappropriation of the services and constituted theft. The State argued that it met its burden to prove that Nelson was guilty of misappropriating water from the City's fire hydrant. The State further argued that the evidence showed that there was criminal damage to the fire hydrant, even while it appeared to remain functional enough for Nelson to obtain water.

*Docket Nos. 221284 and 221285- Failure to Appear*

Tina Wallace, Clerk of Court for the City of Bastrop, testified that Nelson failed to appear in Court on September 20, 2022, for the motion set in Docket Nos. 220218 and 220218, resulting in the two separate charges for failure to appear. On cross-examination, she identified two notices sent to Nelson. The first notice, dated August 9, 2022, advised that a hearing was set for September 20, 2022. This first notice was served on Nelson while he was in jail on August 16, 2022, the same day he appeared in court for trial in those matters. The second notice, dated August 17, 2022, advised that a hearing in those same cases was set for September 27, 2022.

Kenneth Jones, chief deputy city marshal for Bastrop, gave testimony confirming that he personally served the first notice to Nelson in jail on August 16, 2022.

The State and the defense rested. Neither side made closing arguments on the charges of failure to appear.

*Verdicts and Sentencing*

The trial court rendered a verdict as to each charge. On the charges of theft of gas and criminal damage to property for the gas company lock (Docket Nos. 220218 and 220219), the trial court found Nelson guilty, fined him $500, sentenced him to five months mandatory jail time on each charge,

11

"suspend one month with probation," and gave him "the 895 fee of $500 each."

On the charge of theft of water from the Biddison Avenue residence (Docket No. 220464), the trial court found Nelson guilty, fined him $500, sentenced him to five months mandatory jail time with one month suspended, and gave him "$500/$500 on the probation and 895 fees."

On the charges of theft of water from the fire hydrant and criminal damage to the fire hydrant (Docket Nos. 221070 and 221071), the trial court found Nelson guilty, fined him $500 on each charge, sentenced him to five months mandatory jail time on each charge, with one month suspended, and gave him "$500/$500 on the probation and 895 fees."

On the charges of failure to appear in court on September 20, 2022 (Docket Nos. 221284 and 221285), the trial court found Nelson guilty, fined him $500 for each charge, and sentenced him to 90 days mandatory jail time for each charge.

The trial court ordered that the sentences be consecutive.

On February 22, 2023, Nelson filed a motion to reconsider in Docket Nos. 220218; 220219; 220464; 221070; and 221071, and again complained about the prosecutor severing the charges in Docket Nos. 220218 and 220219, thereby denying Nelson his right to a trial by jury and circumventing the limitation in sentencing. He also complained that the sentences imposed were excessive. The motion to reconsider was denied on February 28, 2023.

Nelson filed multiple requests for a copy of the court records in order to seek review of his convictions and sentences. This Court exercised its supervisory review, granted Nelson's writ to docket, and requested briefing.

12

**DISCUSSION**

Nelson alleges the following assignment of errors:

1. Whether the trial court violated the constitutional rights of defendant when it amended a sentence that was agreed to by trial judge, prosecuting attorney, and defendant on May 24, 2022.

2. Did the trial judge amend the sentence after the execution of sentence had begun, in violation of La. C. Cr. P. art. 881?

3. Did the trial court allow the prosecution to amend the bill of information only to double the exposure of the defendant and avoid the provisions of art. 493.1, which limits the penalty for misdemeanor offenses charged in a single bill of information to not more than six months and fine of not more than $1,000 or both?

4. Did the trial court allow an unauthorized severance of charges where the record will show prosecution did not seek or obtain authorization to sever the counts from the court under art. 493.1 clearly because it could not show prejudice in joinder of the offenses other than defendant's exposure being limited by law?

5. Did the trial court act in a proper manner by having a hearing on a motion filed by hired attorney to quash amended bill of information while attorney was in hospital recovering from open heart surgery?

6. Did the trial court act out of pure vindictiveness in the prosecution and conviction of defendant in Docket Nos. 220218 and 220219 where there is clearly no crime committed but simply an unpaid bill from the year before of $1090.12?

7. Was there any simple criminal damage to property in Docket No. 221070?

8. Did the trial court commit double jeopardy by giving the defendant a plea agreement, which it later amended in violation of art. 881 and forced defendant to withdraw his guilty plea in Docket Nos. 220218; 220219; 220464?

*Assignment of Errors 6 & 7- Insufficient Evidence*

Nelson asserts that the trial court erred in finding him guilty in Docket Nos. 2202018 and 2200219 (theft of gas) because the evidence was insufficient to prove a crime was committed. He asserts that the evidence

13

only shows an unpaid bill from the previous year, there was no proof that any gas was unaccounted for, and if any gas did run through the meter after it was shut off, he would have received another bill.

Nelson argues there was insufficient evidence to convict him of the crime of damage to the fire hydrant. He asserts that the only evidence put on at trial was that the top of the hydrant had scratches from the incorrect tool being used to turn the cap. He also highlights that the fire chief did not know if the hydrant had been tested.

When the appellant raises issues regarding trial error and sufficient evidence to convict, the latter must be determined first. *State v. Harris*, 53,662 (La. App. 2 Cir. 1/13/21), 309 So. 3d 988, *writ denied*, 21-00146 (La. 3/11/21), 312 So. 3d 589.

The standard of appellate review for a sufficiency of the evidence claim in a criminal case is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004). The *Jackson* standard, now legislatively embodied in La. C. Cr. P. art 821, does not afford the appellate court with a means to substitute its own appreciation of the evidence for that of the fact finder. *State v. Pigford*, 05-0477 (La. 2/22/06), 922 So. 2d 517; *State v. Steines*, 51, 698 (La. App. 2 Cir. 11/15/17), 245 So. 3d 224, *writ denied*, 17-2174 (La. 10/8/18), 253 So. 3d 797.

The *Jackson* standard also applies in cases involving both direct and circumstantial evidence. An appellate court which reviews the sufficiency

14

of the evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is viewed as such, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. *State v. Sutton*, 436 So. 2d 471 (La. 1983).

Direct evidence provides proof of the existence of a fact, for example, a witness's testimony that he saw or heard something. *State v. Wooten*, 51,738 (La. App. 2 Cir. 2/13/18), 244 So. 3d 1216. Circumstantial evidence provides proof of collateral facts and circumstances, from which the existence of the main fact may be inferred according to reason and common experience. *Id*. If a case rests essentially upon circumstantial evidence, that evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438; *see also*, *State v. Mingo*, 51, 647 (La. App. 2 Cir. 9/27/17), 244 So. 3d 629, *writ denied*, 17-1894 (La. 6/1/18), 243 So. 3d 1064. As an evidentiary rule, La. R.S. 15:438 restrains the fact finder, as well as the reviewer on appeal, to accept as proven all that the evidence tends to prove and then to convict only if every reasonable hypothesis of innocence is excluded. Whether circumstantial evidence excludes every reasonable hypothesis of innocence presents a question of law. *State v. Hampton*, 52,403 (La. App. 2 Cir. 11/14/18); 261 So. 3d 993, *writ denied*, 19-0287 (La. 4/29/19), 268 So. 3d 1029.

In the absence of any internal contradiction or irreconcilable conflict with physical evidence, the testimony of the witness, if believed by the trier of fact, alone, is sufficient support for a requisite factual conclusion. *State v.*

15

*Elkins*, 48,972 (La. App. 2 Cir. 4/9/14), 138 So. 3d 769, *writ denied*, 14-0992 (La. 12/8/14), 153 So. 3d 438; *State v. Wiltcher*, 41,981 (La. App. 2 Cir. 5/9/07), 956 So. 2d 769. Where there is conflicting testimony concerning factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. *State v. Allen*, 36,180 (La. App. 2 Cir. 9/18/02), 828 So. 2d 622, *writ denied*, 02-2595 (La. 6/27/03), 847 So. 2d 1255. The appellate court neither assesses the credibility of witnesses nor reweighs evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442. Rather, the reviewing court affords great deference to the jury's decision to accept or reject the testimony of a witness in whole or in part. *State v. Gilliam*, 36,118 (La. App. 2 Cir. 8/30/02), 827 So. 2d 508, *writ denied*, 02-3090 (La. 11/14/03), 858 So. 2d 422.

The City of Bastrop Code of Ordinances, Chapter 8, Section 8-93, theft of utility service, provides:

> (a) It shall be unlawful for any person to commit the crime of theft of utility service. Theft of utility service is the misappropriation, taking, or use of any electricity, gas, water, or telecommunications which belongs to another, is held for sale by another, or is being distributed by another, without consent of the owner, seller, or distributor or by means of fraudulent conduct, practices, or representations. A taking, misappropriation, or use includes the diversion by any means or device of any quantity of electricity, gas, water, or telecommunications from the wires, cables, pipes, mains, or other means of transmission of such person, or by directly or indirectly preventing a metering device from properly registering the quantity of electricity, gas, water, or telecommunications actually used, consumed, or transmitted.
>
> (b) The trier of fact may infer that there was a misappropriation, taking, or using without the consent of the owner, seller, or distributor, or that there was fraudulent conduct, practices, or representations when:

(1) There is on or about any wire, cable, pipe, main, or meter, or the equipment to which such wire, cable, pipe, main, or meter is affixed or attached, any device or any other means resulting in the diversion of electricity, gas, water, or telecommunications or any device or any other means resulting in the prevention of the proper action or accurate registration of the meter or meters used to measure the quantity of electricity, gas, water, or telecommunications actually used, consumed, or transmitted, or interfering with the proper action or accurate registration of such meter or meters;

(2) The person charged had custody or control of the room, structure, or place where such device, other means, or such wire, cable, pipe, main, meter, or equipment affixed or attached thereto was located; and

(3) The person charged benefited from the misappropriation of such utility service.

Simple criminal damage to property is the intentional damaging of any property of another, without the consent of the owner, and except as provided in R.S. 14:55, by any means other than fire or explosion.  La. R.S. 14:56(A).

The municipal code that Nelson was charged under allowed that the evidence might be circumstantial in section (b) and states that the fact finder is permitted to infer a misappropriation when the utility is diverted, the person charged was in control of the device, and that person also benefited from the misappropriation of the utility.

There was no direct evidence that Nelson cut the lock, which allowed gas to continue flowing through the gas meter.  However, the State presented circumstantial evidence that Nelson was the person in control of the meter and benefited from the gas misappropriation.  The State presented testimony that Nelson was the last account holder for the gas utility at the residence; he was known to live at the home; and he benefited from the gas.

17

Nelson argues that there was no evidence that any gas was misappropriated because the only bill presented was an old bill prior to the disconnection. However, Hawkins testified that although he did not know the amount appropriated, the satellite showed gas flowing through the meter, and he could see the meter was active. Regarding the lock, Hawkins and Officer McDaniel testified that they observed the lock was ground off the meter, which if found to be credible by the trial court, is sufficient to prove damage to property. The trial court found this testimony to be credible. We will not disturb the trial court's credibility determination that Atmos Energy's lock was damaged, and gas continued to flow through the meter after it was locked by Atmos Energy. We affirm these convictions.

Regarding damage to the hydrant, Nelson argues that there was no damage to the hydrant other than some scratches. However, the transcript reveals otherwise. The fire chief and the People's employee testified that there was a wrench on the ground by the fire hydrant. Jennings testified that a spigot was soldered to the hydrant and a water hose attached to the hydrant, which led to the back of Nelson's residence. Sgt. Grey testified that she tried tugging the hose, but it must have been connected to something because it would not move. Chief Williams explained that a special tool must be used to avoid damage to the fire hydrant and that clearly someone used the wrong tool because it left marks. The only person to benefit from the modification of the fire hydrant and the theft of water from the fire hydrant was Nelson. This "modification" of the hydrant caused damage to the top cap and side where the spigot was soldered. The trial court found this testimony to be credible. We affirm this conviction.

18

*Assignment of Error 5- Motion to Quash Hearing & Failure to Appear*

Nelson argues that the hearing on his motion to quash was improperly held, which led to his two charges and convictions for failure to appear. Nelson highlights that his counsel had emergency surgery prior to the hearing and substitute counsel was appointed to represent him. A review of the motion to quash dismissal is discussed below.

Trial on 220218 and 220219 was scheduled to begin on August 16, 2022. On August 9, 2022, the clerk of court signed an order resetting the hearing dates for the motion to quash for September 20, 2022, which was after the scheduled trial. On August 16, 2022, Nelson was served with the notice to appear on September 20, 2022, for the motion to quash. The August 16, 2022, transcript reveals that Nelson's counsel was hospitalized and could not appear in court on September 20, 2022, for a hearing on the motion to quash. The trial court instructed the parties to appear on September 27, 2022, for all matters to be addressed.

Nelson and his substitute counsel failed to appear on September 20, 2022, for the hearing that was held before a *pro tempore* judge. The *pro tempore* judge was a different judge than the one who held the last hearing on August 16, 2022, and scheduled all matters to be taken up on September 27, 2022.

Given the trial court's oral ruling on August 16, 2022, it seems the subpoena for September 20, 2022, should have been withdrawn. Nelson's substitute counsel stated that he was unaware of the September 20, 2022, hearing. Substitute counsel stated that he asked the city prosecutor and clerk for the dates of the upcoming hearings and was only given the September 27, 2022, date. Under the facts of this case, we do not find the failure to

19

appear charges to be proper. It is unfortunate that Nelson's attorney had a medical emergency and substitute counsel had to be appointed. This fact, in addition to the trial court orally stating all matters would be taken up on September 27, 2022, and both Nelson *and substitute counsel* failing to appear, is enough to cast reasonable doubt on the failure to appear charges and convictions.

We find that there was understandable confusion regarding the hearing dates. For these reasons, we reverse Nelson's charges and convictions for failure to appear in Docket Nos. 221284 and 221285.

*Assignments of Error 1, 2, & 8- Amended Sentences*

Nelson challenges the court's ability to amend his sentence after the sentencing hearing on May 24, 2022. However, these issues are now moot because Nelson requested to withdraw his guilty pleas associated with those sentences, and the trial court granted his request. Therefore, the amended sentence was also withdrawn and Nelson's case proceeded under his plea of not guilty. These assignments of error lack merit.

*Assignments of Error 3 & 4- Amended Bill of Information & Severance of Charges*

Nelson argues that the State was not authorized to sever the charges in Docket Nos. 220218 and 22021, and 221070 and 221071. He asserts that the trial court erred in allowing the prosecution to proceed under the amended bills that severed the charges. Nelson argues that the joinder of charges in Docket Nos. 220218 and 220219, and the joinder of charges in Docket Nos. 221070 and 221071, were appropriate under La. C. Cr. P. art. 493, as each set of charges was based on the same transaction or act. Nelson

20

further argues that because they were appropriately joined, La. C. Cr. P. art. 493.1 applied.

La. C. Cr. P. art. 493.1 provides that whenever two or more misdemeanors are joined in accordance with Article 493 in the same indictment or information, the maximum aggregate penalty that may be imposed for the misdemeanors shall not exceed imprisonment for more than six months or a fine of more than $1,000, or both.

Failure of a defendant who is not incarcerated, or failure of his attorney, to appear for the hearing of a pretrial motion filed by the defendant shall be grounds for dismissal by the court. La. C. Cr. P. art. 523.

Nelson timely challenged the severance of the charges in the July 25, 2022, amended bills by filing a motion to quash. His motion was dismissed because he did not appear in court on September 20, 2022. Then, at the September 27, 2022, hearing, the trial court stated that he could refile his motion to quash.

Based on Nelson's and his counsel's failure to appear at the hearing on the motion to quash, the trial court properly denied the motion under La. C. Cr. P. art. 523. The trial court gave Nelson an opportunity to refile his motion to quash and that issue could have been properly argued before the trial court. However, the motion was never refiled. Therefore, we find the trial court did not err in the denial under La. C. Cr. P. art. 523.

## CONCLUSION

For the reasons stated herein, we grant Nelson's writ application; reverse Nelson's charges and convictions for failure to appear in Docket

21

Nos. 221284 and 221285; and affirm his remaining convictions and sentences.

**WRIT GRANTED; REVERSED IN PART; AFFIRMED IN PART.**